**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| ACCESSNINJA, INC. d/b/a ACCESSGRID, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | |
| PASSNINJA, INC. and RICHARD GRUNDY, | ) ) ) | **JURY TRIAL DEMANDED** |
| *Defendants.* | ) ) | |
| _____ | ) | |

**COMPLAINT**

Plaintiff AccessNinja, Inc. d/b/a AccessGrid ("AccessGrid"), by and through its undersigned counsel, sues Defendants PassNinja, Inc. ("PassNinja") and Richard Grundy ("Grundy") and states as follows:

**INTRODUCTION**

1.      This is an action for (i) direct copyright infringement under The Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. (the "Copyright Act"); (ii) contributory copyright infringement under the Copyright Act; and (iii) Misappropriation of Trade Secrets under Florida's Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.

2.      Plaintiff AccessGrid is a Delaware corporation engaged in the business of developing and exploiting an application programming interface ("API") that allows for the issuance and management of Near Field Communication ("NFC") passes. NFC passes are essentially digital "tickets" that can be distributed and scanned at events, attractions, and experiences, or used as digital "keys" to open physical doors.

3.      Defendant PassNinja is a competitor of AccessGrid in the NFC space.  But instead of developing its own NFC technology, PassNinja and its founder, defendant Richard Grundy, have willfully and unlawfully copied and exploited AccessGrid's proprietary software code that AccessGrid founder and Chief Executive Officer ("CEO") Auston Bunsen wrote.

4.      AccessGrid demanded that PassNinja cease its infringement or pay a reasonable and appropriate license fee for the use of AccessGrid's code, which is registered with the U.S. Copyright Office as Registration Number TXu 2-453-833 (the "Copyrighted Work").  AccessGrid likewise issued multiple notices of infringement to PassNinja in accordance with the Digital Millennium Copyright Act ("DMCA").  Yet PassNinja simply ignored those notices and refused to cease its willful and unlawful infringement of the Copyrighted Work.  AccessGrid now brings this action to enforce its exclusive copyrights, halt PassNinja's willful and unlawful infringement, and recover damages for the harm PassNinja caused.

## PARTIES, JURISDICTION & VENUE

5.      Plaintiff AccessGrid is a Delaware Corporation with its principal place of business located in Miami, Florida.

6.      Defendant Richard Grundy is an individual person residing in Miami-Dade County, Florida.

7.      PassNinja is a Delaware Corporation with its principal place of business located in Miami Beach, Florida.

8.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has supplemental subject matter jurisdiction over Plaintiffs' state claims under 28 U.S.C. § 1367 because the claims are joined with substantial and related federal claims

and form a part of the same case or controversy and derive from a common nucleus of operative facts under Article III of the United States Constitution.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims herein occurred in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff and Defendants reside and conduct business in this District and Defendants are subject to personal jurisdiction in this District.

11.     This Court has personal jurisdiction over Defendants because Defendants consented to jurisdiction in this District, and reside and conduct business in Miami-Dade County, Florida.

### STATEMENT OF FACTS

12.     AccessGrid's Founder and CEO Auston Bunsen is a successful web developer and entrepreneur who has had his work featured in the New York Times, Forbes, Business Insider, The Miami Herald, TechCrunch and more.

13.     Bunsen has known defendant Grundy for approximately fifteen years through various interactions and collaborations among the greater community of technology entrepreneurs in Miami.

14.     In or about January 2020, Bunsen helped Grundy develop high level strategy for building and growing PassNinja, including a plan for managing contract software developers to write programming code.  At that time, Bunsen was not interested in participating in PassNinja by writing code himself.

15.     Unfortunately, despite Bunsen's valuable guidance and mentoring, Grundy was not successful in building PassNinja into a viable, operating business.

16.     Bunsen, however, remained interested in NFC technology, and in early 2023, he began writing the programming code that would eventually become the Copyrighted Work.

17.     In or around February 2023, Bunsen approached Grundy with a proposal that they work together to build PassNinja, with Bunsen contributing the Copyrighted Work that he had started writing in exchange for fifty-one percent (51%) of the stock in PassNinja.

18.     Defendant Grundy recognized that the Copyrighted Work and Bunsen's collaboration would likely make PassNinja a valuable and successful business.

19.     For months, Bunsen and Grundy continued to negotiate the terms of a formal agreement that they both recognized needed to be memorialized with appropriate documentation.

20.     During that time, in a good faith effort to collaborate on the contemplated new venture, Bunsen granted Grundy limited access to the Copyrighted Work for the limited and exclusive purpose of writing tutorials for potential customers to learn about NCF technology and its commercial applications.

21.     Meanwhile, Bunsen worked tirelessly on writing the Copyrighted Work, ultimately spending approximately 1,800 hundred hours coding.

22.     No other person substantially contributed to or assisted in authoring the Copyrighted Work.

23.     Ultimately, however, negotiations over equity and plans for PassNinja between Bunsen and Grundy stalled and ultimately fell apart in the summer of 2024.  Bunsen and Grundy never reached or executed a final agreement regarding equity in PassNinja or its right to use the Copyrighted Work.

24.     Following the collapse of negotiations with Grundy, Bunsen decided to build his own business to exploit the Copyrighted Work he had worked for more than a year to create. Bunsen incorporated AccessGrid for that purpose on or about August 26, 2024.

25.     As the author of the Copyrighted Work, Bunsen was the owner of all copyrights in the Copyrighted Work until he assigned those rights to AccessGrid on August 27, 2024.

26.     AccessGrid successfully registered the Copyrighted Work with the U.S. Copyright Office on October 30, 2024.[1]

27.     Neither Bunsen nor AccessGrid ever granted Grundy or PassNinja any license to use or exploit the Copyrighted Work.  Nor did Bunsen or AccessGrid ever transfer any interest in the Copyrighted Work to Grundy or PassNinja.

28.     On September 8, 2024, Bunsen notified Grundy that AccessGrid, as the owner of the copyrights, revoked the limited authorization Bunsen had previously granted to Grundy to access the Copyrighted Work for the limited, sole and exclusive purpose of writing customer tutorials.  Bunsen offered Grundy and PassNinja the opportunity to license the Copyrighted Work from AccessGrid for a monthly fee.

29.     Defendants never paid for or obtained the proposed licensed for the Copyrighted Work.  Instead, Grundy and PassNinja unlawfully copied the Copyrighted Work and exploited it for their own commercial purposes.  Indeed, the Copyrighted Work is now the primary economic engine for PassNinja's business.

30.     Bunsen soon learned of Defendants' unlawful misappropriation of the Copyrighted Work and acted swiftly to protect AccessGrid's exclusive copyrights in the Copyrighted Work.

---

[1] A copy of the U.S. Copyright Registration Certificate is attached hereto as Exhibit A.

31.     On October 28, 2024 Bunsen submitted a DMCA notice to Amazon Web Services, Inc. requesting removal of the Copyrighted Work from PassNinja's website.

32.     On October 30, 2024 Bunsen submitted a DMCA notice to Google, LLC requesting removal of the Copyrighted Work from PassNinja's website.

33.     On October 28, 2024, Bunsen submitted a DMCA notice to Salesforce, Inc. ("Salesforce").

34.     Bunsen submitted similar DMCA notices to other service providers in late October 2024, but ultimately only Salesforce responded to the notice by taking the requested action and removing the Copyrighted Work.

35.     On October 29, 2024, Grundy and PassNinja submitted a DMCA Counter Notice to Salesforce falsely representing, under penalty of perjury, that PassNinja owned the Copyrighted Work and demanding that it be restored.

36.     As a result of Grundy and PassNinja's intentional false representation to Salesforce, Salesforce restored the Copyrighted Work to PassNinja's website.

37.     As of the filing of this complaint, PassNinja continues to promote the Copyrighted Work on PassNinja's website, despite having no right to use the Copyrighted Work or any copyrights in it. [2]

38.     Left with no alternative, AccessGrid now brings this action to end PassNinja's willful and unlawful infringement of the Copyrighted Work and recover damages for the harm caused to date.

---

[2] *See* PassNinja, https://www.passninja.com (last visited Nov. 20, 2024) ("Use our software and APIs to create, issue, update, and revoke passes for Apple Wallet and Google Wallet in minutes instead of months.").

39.    AccessGrid has retained the undersigned law firm in connection with this action and is obligated to pay a reasonable fee for its services.

## COUNT I
### Copyright Infringement under 17 U.S.C. § 101 *et seq.*
### (*Against PassNinja*)

40.    Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

41.    The Copyrighted Work is an original electronic code containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et. seq*.

42.    Plaintiff AccessGrid a is the exclusive owner of all rights in and to the Copyrighted Work, as indicated on the registration for the Copyrighted Work.[3]

43.    The Copyrighted Work has great economic value in that it can be licensed or utilized for various commercial applications.  For example, the Copyrighted Work can be used to issue tickets to concerts and other events, unlock lockers for Amazon delivery pickups, and earn revenue from AccessGrid customers that desire to issue passes.

44.    PassNinja directly infringed Plaintiff's exclusive rights in the Copyrighted Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501, by reproducing and exploiting the Copyrighted Work for commercial purposes without authorization from AccessGrid.

45.    PassNinja's infringement of the copyrights in the Copyrighted Work has been and is willful, with full knowledge of AccessGrid's rights in the Copyrighted Work, in order for PassNinja to illegally profit from AccessGrid's valuable intellectual property.

46.    As a direct and proximate result of PassNinja's infringing conduct alleged herein, AccessGrid has suffered damages in an amount to be proven at trial. Pursuant to 17 U.S.C. §

---

[3] *See* Exhibit A.

504(b), AccessGrid is also entitled to: (i) an accounting of PassNinja's profits attributable to its infringement of the Copyrighted Work, including any gains, profits, and advantages obtained using the Copyrighted Work; (ii) establishment of a constructive trust over those illicit profits; and (iii) disgorgement of those illicit profits for the benefit of AccessGrid.

47.     As a direct and proximate result of the PassNinja's continued infringement of AccessGrid's rights in the Copyrighted Work, AccessGrid has also sustained and will continue to sustain substantial, immediate, and irreparable injury, including but not limited to diversion of future business, for which there is no adequate remedy at law.  On information and belief, unless Defendants' infringing conduct is enjoined by this Court, PassNinja will continue to infringe the Copyrighted Work.  AccessGrid therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining PassNinja's ongoing infringement.

WHEREFORE Plaintiff demands a judgment against PassNinja in an amount to be determined at trial; an accounting of profits attributable to the infringement of the Copyrighted Work; establishment of a constructive trust over those illicit profits; disgorgement of those illicit profits for the benefit of AccessGrid; preliminary and permanent injunctive relief restraining and enjoining infringing conduct by PassNinja; and such other additional relief as this Court deems just and appropriate.

## COUNT II
## Contributory Copyright Infringement
### (*Against Grundy*)

48.     Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

49.     The Copyrighted Work is an original electronic code containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et. seq*.

50.     Plaintiff AccessGrid is the exclusive owner of all rights in and to the Copyrighted Work, as indicated on the registration for the Copyrighted Work.[4]

51.     PassNinja directly infringed Plaintiff's exclusive rights in the Copyrighted Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501, by reproducing and exploiting the Copyrighted Work for commercial purposes without authorization from AccessGrid.

52.     Grundy induced, caused or materially contributed to the infringing conduct of PassNinja, including by directing and providing the instructions for the infringement of the Copyrighted Work.

53.     Grundy had actual and/or constructive knowledge of PassNinja's infringement of the Copyrighted Work, yet Grundy promoted and contributed to the infringement, and refused to exercise his ability to stop the infringement of the Copyrighted Work.

54.     Grundy's conduct and contributory infringement is and has been willful, intentional, purposeful, and in disregard of the rights of Plaintiff, and has caused substantial damage to Plaintiff.

55.     As a result of Grundy's violations of the Copyright Act as alleged herein, AccessGrid has suffered damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), AccessGrid is also entitled to: (i) an accounting of Grundy's profits attributable to the infringement of the Copyrighted Work, including any gains, profits, and advantages obtained using the Copyrighted Work; (ii) establishment of a constructive trust over those illicit profits; and (iii) disgorgement of those illicit profits for the benefit of AccessGrid.

56.     As a result of Grundy's violations of the Copyright Act, AccessGrid has also sustained and will continue to sustain substantial, immediate, and irreparable injury, including but

---

[4] *See* Exhibit A.

not limited to diversion of future business, for which there is no adequate remedy at law. AccessGrid therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Grundy's ongoing infringing conduct.

WHEREFORE Plaintiff demands a judgment against Grundy for damages in an amount to be determined at trial; an accounting of profits attributable to the infringement of the Copyrighted Work; establishment of a constructive trust over those illicit profits; disgorgement of those illicit profits for the benefit of AccessGrid; preliminary and permanent injunctive relief restraining and enjoining infringing conduct by Grundy; and such other additional relief as this Court deems just and appropriate.

**COUNT III**
**Misappropriation of Trade Secrets under FUTSA**
(*Against All Defendants*)

57.     Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

58.     Defendants stole AccessGrid's electronic code, which was a trade secret within the meaning of Florida Statutes, Section 688.002(4) (the "Trade Secret").

59.     The Trade Secret derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

60.     AccessGrid took efforts that were reasonable under the circumstances to maintain the secrecy of the Trade Secret, including restricting accesses to the code, among other security measures, including that the code was stored within a private GitHub account that was password protected and required two-factor authentication.

61. Defendants misappropriated the Trade Secret through improper and unauthorized means, including through misrepresentations that Defendants would transfer 51% of PassNinja's stock to Bunsen, in exchange for the use of the Trade Secret.

62. Defendants knew or had reason to know that they acquired the Trade Secret through improper means.

63. As a result of the misappropriation of the Trade Secret by Defendants, Plaintiff has suffered and continues to suffer damages.

WHEREFORE Plaintiff demands a judgment against Defendants for damages in an amount to be proven at trial; exemplary damages, including attorney's fees, costs, and interest; and such other additional relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated: December 4, 2024

Respectfully submitted,
/s/ *Daniel C. Mazanec*
Daniel C. Mazanec, Esq.
Florida Bar No. 887387
dan@pag.law
Alexandra Goodstone, Esq.
Florida Bar No. 0125003
alexandra@pag.law
PAG LAW, PLLC
Four Seasons Tower
1441 Brickell Avenue, Suite 1120
Miami, FL 33131
Tel. 786.292.1599

*Counsel for Plaintiff AccessNinja, Inc. d/b/a AccessGrid*