**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:24-cv-24745-RKA/EAL

**ACCESSNINJA, INC.,**

      Plaintiff,

v.

**PASSNINJA, INC.,** and
**RICHARD GRUNDY,**

      Defendants.

_____/

**PASSNINJA, INC.,** and
**RICHARD GRUNDY**,

      Third-Party/Counter
      Plaintiffs,

v.

**AUSTON BUNSEN,**
**HF0 ADVISORS, LLC,** and,
**ACCESSNINJA, INC.,**

      Third-Party Defendants
      and Counter-Defendant.

_____/

## THIRD PARTY COMPLAINT AND COUNTERCLAIM

Third-Party/Counter-Plaintiffs PassNinja, Inc. ("***PassNinja***") and Richard Grundy

("***Grundy***"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 13 and 14 sues

Counter-Defendant AccessNinja, Inc. ("***AccessNinja***") and Third-Party Defendants Auston

Bunsen ("***Bunsen***") and HF0 Advisors, LLC ("***HF0***", collectively with AccessNinja and Bunsen

the "***AccessNinja Defendants***") and states as follows:

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

## INTRODUCTION

1.      This is an action for (i) direct, contributory and vicarious copyright infringement of TXu002458594 under The Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "***Copyright Act***") by the AccessNinja Defendants; (ii) Direct, Contributory and Vicarious Copyright Infringement of TXu002458390 by the AccessNinja Defendants under the Copyright Act; (iii) Removal of Copyright Management Information by Bunsen and AccessNinja; (iv) DMCA Misrepresentations by Bunsen and AccessNinja; (v) Lanham Act Unfair Competition by the AccessNinja Defendants; (vi) Common Law Unfair Competition by the AccessNinja Defendants; (vii) Misappropriation of Trade Secretes under Florida's Uniform Trade Secrets Act ("***FUTSA***"), Fla. Stat. § 688. by the AccessNinja Defendants;  (viii) Tortious Interference as to HF0; (ix) Tortious Interference as to Bunsen and AccessNinja; (x) Breach Of Fiduciary Duty of Bunsen; (xi) Unjust Enrichment Of The AccessNinja Defendants; (xii) Declaratory Judgment of Invalidity; (xiii) Declaratory Judgment Of Non-Infringement;  and,  (xiv)  Declaratory  Judgment  of  Rights  Under  the  Agreement (hereinafter defined at ¶ 23 referencing **Exhibit B**).

## PARTIES, JURISDICTION & VENUE

2.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      This Court has supplemental subject matter jurisdiction over PassNinja's state claims under 28 U.S.C. § 1367 because the claims are joined with substantial and related federal claims and form a part of the same case or controversy and derive from a common nucleus of operative facts under Article III of the United States Constitution.

4.      Third-Party/Counter-Plaintiff PassNinja is a Delaware Corporation with its principal place of business located in Miami Beach, Florida.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

5.      Third-Party/Counter-Plaintiff Grundy is an individual residing in Miami Dade County Florida and the founder of PassNinja.

6.      Counter-Defendant AccessNinja is a Delaware Corporation with its principal place of business located in Miami, Florida.

7.      Third-Party Defendant Bunsen is an individual residing in Miami-Dade County Florida.

8.      Third-Party Defendant HF0 is a Delaware limited liability company registered to do business in Florida as a foreign limited liability company with a principal place of business at 4619 Madison St. Hollywood, FL 33021.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims herein occurred in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because PassNinja and the AccessNinja Defendants reside and conduct business in this District and the AccessNinja Defendants are subject to personal jurisdiction in this District.

10.     This Court has personal jurisdiction over the AccessNinja Defendants because the AccessNinja Defendants consented to jurisdiction in this District and reside and conduct business in Miami-Dade County, Florida.

## STATEMENT OF FACTS

11.     AccessNinja's Founder and CEO Auston Bunsen claims to be a successful web developer and entrepreneur who has had his work featured in the New York Times, Forbes, Business Insider, The Miami Herald, TechCrunch and more.

12.     Richard Grundy is the founder and president of Flomio, Inc. and PassNinja, Inc.

13.     On or about May 2011 Flomio, Inc. was formed as a Delaware corporation.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

14.     Later on, or about August 15, 2019, PassNinja, Inc. was formed as a Delaware corporation. PassNinja is a spin-off from Flomio, a company that focused on developing portable NFC hardware compatible with mobile devices.

15.     Flomio created the first NFC reader designed for the iPhone, which raised over $100,000.00 on Kickstarter.com.

16.     Flomio was supported by IncubateMiami, a local accelerator sponsored by the city of Miami, and later secured outside investment from notable investors, including TechStars and RMR Capital, to scale hardware sales globally. PassNinja was spun off from Flomio after years of development efforts.

17.     PassNinja is a trademark used by PassNinja to market its software as a service ("*SaaS*") and AccessNinja is likely to cause consumer confusion.

18.     The **PassNinja™** trademark has become well known with consumers that associate **PassNinja** and its **Ninja™** services with NFC Communications technology and the issuing, revoking and management of all types of digital passes. PassNinja is one, if not the only provider providing full-service pass management for Google and Apple Wallets. For more than the past five years, PassNinja has continuously and exclusively used the **PassNinja™** and **Ninja™** Marks in relation to pass management, NFC and/or digital wallet services

19.     No other persons, have the right to use the **PassNinja™** or **Ninja™** marks in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

20.     The website and software associated with PassNinja underwent multiple iterations between 2019 and 2023.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

21.     The earlier versions of the PassNinja.com website, dated late 2020, included a copyright notice explicitly stating "©2020 - PassNinja | All rights reserved."

22.     Notably, PassNinja's copyrighted software written in JavaScript programming language predates Bunsen's involvement and is registered with the U.S. Copyright Office as Registration Number TXu002458390.  *See* **Exhibit A**.

23.     Bunsen's significant involvement with PassNinja began in February 2023 after Bunsen proposed to contribute to PassNinja's development under a mutual agreement. In an email dated February 9th, 2023, Bunsen outlined the terms of his contribution, which included payment in vested equity in exchange for active development work. Grundy, Bunsen and PassNinja accepted the terms of this agreement on February 10th, 2023. See **Exhibit B** (the "***Agreement***").

24.     The agreement drafted by Bunsen is clear that Bunsen agreed "***to work on*** [the pre-existing work] ***PassNinja*** . . .  in exchange for . . . 51% of the company stock vested over 4 years with a cliff that occurs at 100 net new paying customers or 9 months of active code development, whichever happens sooner."  The Agreement (emphasis added).

25.     Bunsen admits that pursuant to the Agreement Bunsen had at least an obligation to assign the work to PassNinja in exchange for his equity.

26.     Pursuant to the Agreement, PassNinja gave Bunsen access to PassNinja's system, its proprietary developer relationships, and existing codebase.

27.     For example, amongst other things, PassNinja provided Bunsen with special subscriber, developer and/or partner access to Apple NFC development, Google NFC development, Stripe.com, Sentry.io, Linear.app, Notion.so, Heroku.com, Intercom.com, Hotjar.com, Twilio.com, Sendo.dev, and and Postmarkapp.com. To access these developer

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

systems, tools, modules and subscriptions Bunsen used passwords and credentials belonging to PassNinja.

28.     Throughout the duration of the time Bunsen worked for PassNinja, he was assigned the email address a@passninja.com. Bunsen used this email address to represent PassNinja in dealings with investors like HF0, customers like ItsWare, partners like Apple/Google, and suppliers like Alvarado where Bunsen exerted actual and apparent authority to act of behalf of PassNinja.

29.     The development and evolution of PassNinja's software was made possible through prior and ongoing partnerships with Flomio, Apple, and Google, each governed by non-disclosure agreements. These agreements granted PassNinja access to confidential documentation, proprietary software entitlements, and other critical resources that were instrumental in building the platform. The incorporation of this confidential knowledge into PassNinja's software underscores the proprietary nature of PassNinja's source code and establishes that any trade secrets arising from this development are exclusively owned by PassNinja and its licensors. As such, these trade secrets are protected under applicable laws and cannot be misappropriated or claimed by external parties.

30.     In or about early August 2024, investor group HF0 invited PassNinja to interview for a $1,000,000.00 investment opportunity.

31.     On August 19, 2024, HF0 paid for Bunsen and Grundy to travel to San Francisco to conduct the interview. The interview went well, and HF0 told PassNinja it would take a week to make their decision whether to invest in PassNinja or not.

32.     On August 23, 2024, HF0 notified Bunsen of their intention to invest $1,000,000.00 in PassNinja and provided terms requiring a response within twenty-four (24) hours.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

33.     Bunsen and Grundy discussed the offer over text message that day, during which Bunsen expressed urgency to accept the offer immediately. Bunsen insisted that PassNinja use the proceeds to hire Bunsen and Grundy to quit their other jobs and work solely on PassNinja, hire Bunsen's wife at an above-market rate, and relocate to San Francisco for several months.

34.     While Grundy acknowledged the significance of the opportunity, Grundy voiced several concerns and asked to proceed while tabling the logistical details until Grundy was scheduled to return to Miami on September 2, 2024, after a planned camping trip.

35.     Bunsen seemingly agreed to move forward as well and wished Grundy a good trip.

36.     Upon returning to Miami, Grundy reached out to Bunsen to schedule a meeting to discuss the HF0 investment and their plans for PassNinja. Bunsen informed Grundy he was busy and arranged to meet at the end of the week, on Friday, September 6, 2024. During that meeting, Bunsen presented Grundy with an ultimatum: either sell Grundy's stake in PassNinja to Bunsen or agree to dissolve PassNinja.

37.     Grundy was puzzled by these limited options, as Grundy felt the most obvious would be for Grundy to buy Bunsen out if Bunsen no longer wanted to continue working on PassNinja. Bunsen then revealed that HF0 was only willing to invest with him so he would be taking the HF0 investment with another company that Grundy would not be involved.

38.     At that time, unbeknownst to Grundy or PassNinja Bunsen was already planning with HF0 to set up a copycat company, exploiting the programming code and customer contacts Bunsen had developed while working with PassNinja, and using the HF0 investment. Bunsen and HF0's actions betrayed PassNinja and undermined the trust PassNinja and Grundy had placed in them.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

39.     Bunsen and HF0 were aware of the proprietary nature and value of PassNinja's confidential source code, customer information and future development plans. Yet, the AccessNinja Defendants schemed together to just take the PassNinja assets and engage in lawfare and corporate sabotage.

40.     On or about September 8, 2024, in furtherance of his scheme with HF0 and AccessNinja Bunsen deleted PassNinja's Heroku production and staging server instances, as well as its PostgreSQL customer database, effectively crippling key systems. Also, pages *Support-Cookbook-1b280859c0304ed780e3ea6cf38089ee* and *Website-changesa1f6547eb2834cAb09ddd45f16b276a* were removed from the company's Notion account. These critical assets, among others, contain the backbone of PassNinja's operations: the data and trust of paying customers, relationships which were built solely under Grundy's leadership. This is not only an egregious act of sabotage but a flagrant violation of any understanding or actual and/or implied duty that existed between Bunsen and PassNinja. Customer complaints following these actions demonstrate the operational setbacks and frustration caused by these disruptions.

41.     The intent behind Bunsen, AccessNinja and HF0's malicious action is crystal clear. On August 26, 2024, mere days after a conversation in which Bunsen disclosed a one-million-dollar ($1,000,000.00) investment offer from HF0, Bunsen purportedly formed AccessNinja, Inc., a direct competitor to PassNinja.

42.     In fact, Bunsen admitted his and HF0's intention to use the PassNinja customer database to establish this competing entity and poach existing PassNinja clients. This sequence of events leaves no room for interpretation: this is a deliberate and premeditated theft of intellectual property and a breach of fiduciary duty, executed with the singular aim of undermining PassNinja,

hijacking its customer base, and unlawfully enriching the AccessNinja Defendants at PassNinja's expense.

43.     In the weeks following September 13, 2024, Grundy worked to repair the PassNinja website and recover the customer accounts. Drawing from the over sixteen local developers PassNinja has worked with in the past, Grundy hired local experts to return the site and service to full operation.

44.     AccessNinja was purportedly incorporated on August 26, 2024, and its website seems to have launched as http://accessgrid.com on December 9, 2024. The website copy and product marketing closely resemble PassNinja's and suggest misappropriation of trade secrets and copyrighted work owned by PassNinja under U.S Copyright Office Registration Number TXu002458594. *See* **Exhibit C.**

45.     In one view, the PassNinja solution can be described as composing eight (8) functional components including the Static HTML, Pass Designer, Twilio One-Time Password (OTP), Event Log, Pass API, ActiveAdmin, PostgresDB, and Stripe Billing. Some components are new as of the latest version of code **Exhibit C** (TXu002458594), but most are from the prior version **Exhibit A** (TXu002458390).

a. The "***Static HTML***" is the rendered text and graphics of the website.

b. The "***Pass Designer***" is an active form that lets users visualize what issued passes will look like in the mobile wallet.

c. The "***Pass API***" is the application programming interface that customers use to integrate PassNinja's service into their business.

d. The "***Event Log***" shows the list of events a customer has triggered with the PassNinja service.

e. The "*PostgresDB*" is the database to store all the relevant metadata for issuing and managing passes for customers.

(collectively the "*PassNinja Components*").

46.     On or about August 26, 2024, just prior to reneging on the Agreement by unilaterally refusing to enter into a more formal operating agreement, refusing to provide further work, and refusing to accept Bunsen's then partially vested equity in PassNinja, Bunsen formed AccessNinja, Inc.

47.     This was done for the purposes of sabotaging PassNinja, as a bad-faith-negotiation tactic, and for AccessNinja and Bunsen hijacking PassNinja assets after a business opportunity was presented to PassNinja.

48.     Bunsen specifically chose the name Access**Ninja** to misappropriate PassNinja's goodwill and trade on PassNinja's common law trademark rights in Pass**Ninja**™ by creating a false association between the companies and the misappropriated trade secrets and infringed copyrights.

49.     When Bunsen created AccessNinja Bunsen caused AccessNinja to file an application with the Copyright Office of the work he allegedly did while working on PassNinja (the "*Fraudulent Copyright Application*"). When filing the Fraudulent Copyright Application, Bunsen and AccessNinja intentionally failed to disclose to the copyright office that the deposit for the Fraudulent Copyright Application was derived from PassNinja's code and contains multiple references to *PassNinja's pre-existing work* created by and exclusively for PassNinja. The Deposit for the Fraudulent Copyright Application also contains substantial source code and comments which Bunsen admits that he did not write and which AccessNinja did not disclaim in its

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

Fraudulent Copyright Application. *See* **Exhibits D** and **E** (collectively the "*Altered PassNinja Source Code*").

50.    The PassNinja Components were included in previous iterations of PassNinja predating Bunsen's involvement with the company yet were not excluded from AccessNinja's Fraudulent Copyright Application that resulted in the fraudulent Copyright Registration (the "*Fraudulent Registration*").

51.    In fact, Bunsen admitted in open court that Bunsen created a special program to remove the HTML and copyright notices from the PassNinja Source code (collectively the "*CMI*") before submitting the Altered PassNinja Source Code as the deposit copy for the Fraudulent Copyright Application with the United States Copyright Office.

52.    Additionally, AccessNinja filed the Fraudulent Copyright Application claiming that it was a work-made-for-hire of AccessNinja while Bunsen admits that the work that is claimed in the Fraudulent Copyright Application preexisted the formation of AccessNinja.

53.    Unlike normal copyright office policy, the Altered PassNinja Source Code has no copyright notice and consists of only the first and last ten pages of source code, rather than the twenty-five first and twenty-five last pages.

54.    AccessNinja also failed to disclose to the Copyright Office that any contributions contained within the Altered PassNinja Source Code were functional and not expressive in nature and, with the exception of removing and altering the CMI, were only done with PassNinja's expressed authorization.

55.    According to the AccessNinja website, AccessNinja is funded and supported by HF0 and its investors.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

56.     HF0 knew or should have known that AccessNinja infringes PassNinja's copyrights and the PassNinja Trademark, and that AccessNinja and Bunsen misappropriated PassNinja's trade secrets and sensitive company information, including source code, development plans, customer information and other information that Bunsen owed a duty to PassNinja to keep secret and proprietary.

57.     Yet, HF0 continues to advertise, advise, fund and support AccessNinja and Bunsen with the continued intent to encourage and induce AccessNinja's infringements and misappropriation to the willful detriment of PassNinja.

58.     On information and belief, through its relationship with AccessNinja and Bunsen, HF0 has the ability to control and will directly profit from AccessNinja and Bunsen's infringements and misappropriation.

59.     Additionally, HF0 was aware of the Agreement and knew or should have known that by investing in and supporting the infringements and misappropriation of Bunsen and AccessNinja HF0 would interfere with Bunsen's relationship with PassNinja and it would harm PassNinja's actual and prospective relationships with PassNinja's customers and PassNinja's investors.

60.     All conditions precedent have either occurred or have been waived.

### COUNT I COPYRIGHT INFRINGEMENT TXU002458594
(Against Bunsen and AccessNinja Directly and for
Contributory and Vicarious Infringement Against Bunsen, AccessNinja and HF0)

61.     PassNinja incorporates and realleges by reference paragraphs 1 to 60 above.

62.     PassNinja is the owner of the Certificate of Registration.   *See* **Exhibit A** (the "*2020 Registration*").

63.     Bunsen individually and on behalf of AccessNinja have infringed the copyrights related to the 2020 Registration in filing the Fraudulent Copyright Application, and in implementing AccessNinja's SaaS.

64.     Bunsen as an officer and programmer for PassNinja was provided access to PassNinja's source code and admits that he caused AccessNinja to register a derivative copy which removes the PassNinja copyright notices and HTML.

65.     Bunsen has also admitted that AccessNinja intended to use the PassNinja source code constituting the work that is subject of the 2020 Registration for AccessNinja's own competing business.

66.     Based upon information and belief, including recent updates to the AccessGrid.com website owned by AccessNinja, PassNinja believes AccessNinja and Bunsen are actively infringing PassNinja's copyrights, including those represented by the 2020 Registration.

67.     HF0, AccessNinja, and Bunsen also actively encourage and induce the infringement of the 2020 Registration by promoting and aiding and abetting in AccessNinja's SaaS that infringes the PassNinja 2020 Registration.

68.     HF0, AccessNinja, and Bunsen directly benefit from the infringement of copyrighted work subject to the 2020 Registration and have the ability to control the infringement.

69.     Such acts constitute unauthorized reproduction and distribution and result in unauthorized copies.

70.     The AccessNinja Defendants' aforesaid activities constitute direct, contributory and vicarious infringement of PassNinja's copyrights in the 2020 Registration.

71.     At a minimum, the AccessNinja Defendants acted with willful blindness to and in reckless disregard of Plaintiff's registered copyrights.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

72.     As a result of their wrongful conduct, the AccessNinja Defendants are liable to PassNinja for copyright infringement. 17 U.S.C. § 501.

73.     The AccessNinja Defendants' actual, contributory, and vicarious infringement of the copyrights represented by the 2020 Registration causes PassNinja irreparable harm.

74.     PassNinja has suffered damages.  PassNinja is entitled to recover damages, which include PassNinja's actual damages and any additional profits of the AccessNinja Defendants or statutory damages as provided by 17 U.S.C. § 504.

75.     PassNinja is also entitled to injunctive relief pursuant to 17 U.S.C. § 502.

WHEREFORE, PassNinja prays that this Court enter Judgment that:

a.      The AccessNinja Defendants, their agents, servants, employees, franchisees, licensees, attorneys and all others, be enjoined and restrained, during the pendency of this action as preliminary injunction and permanently thereafter from:

   i.      Using, copying or otherwise exploiting PassNinja's copyrights and copyrighted works;

   ii.     Using, disclosing, converting, appropriating, retaining, selling, transferring or copying any property of PassNinja;

   iii.    Doing any other act or thing likely to, or calculated to, induce the belief that the AccessNinja Defendants' business is in any way affiliated, connected or associated with PassNinja, or PassNinja's business;

b.      AccessNinja Defendants, their agents, servants, employees, franchisees, licensees, attorneys and all others be required to deliver for destruction all marketing materials, including but not limited to letterhead, business cards, signs, prints, packages, brochures, wrappers, receptacles, forms, files, advertisements and the

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

like in their possession bearing any of PassNinja's copyrights, and any other reproduction, counterfeit, copy or colorable imitation of the PassNinja's copyrights.

c.   The AccessNinja Defendants to be required to pay PassNinja's actual damages and any additional profits of the AccessNinja Defendants or statutory damages as provided in an amount of $150,000 for each willful infringement.

d.   AccessNinja Defendants jointly and severally be required to pay PassNinja its attorneys' fees and the costs of this action.

e.   AccessNinja Defendants remove all instances of PassNinja's copyrighted content from their websites, servers, social media, product listings, or anywhere else AccessNinja Defendants copied PassNinja's copyrighted works.

f.   PassNinja to have such other and further relief as this Court deems just, fair, and equitable.

### COUNT II COPYRIGHT INFRINGEMENT TXU002458390
(Against Bunsen and AccessNinja Directly and for
Contributory and Vicarious Infringement Against Bunsen, AccessNinja and HF0)

76.   PassNinja incorporates and realleges by reference paragraphs 1 to 60 above.

77.   PassNinja is the owner of the Certificate of Registration.   *See* **Exhibit C** (the "*2024 Registration*").

78.   Bunsen individually and on behalf of AccessNinja have infringed the copyrights related to the 2024 Registration in filing the Fraudulent Copyright Application and in implementing AccessNinja's SaaS.

79.   Bunsen was provided access to PassNinja's source code and admits that he caused AccessNinja to register a copy with the US Copyright Office which removes the PassNinja copyright notices and HTML.

80.     Bunsen has also admitted that AccessNinja intended to use the PassNinja source code constituting the work that is subject of the 2024 Registration for AccessNinja's own competing business.

81.     Based upon information and belief, including recent updates to the AccessGrid.com website owned by AccessNinja, PassNinja believes AccessNinja and Bunsen are actively infringing PassNinja's copyrights, including those represented by the 2024 Registration.

82.     HF0, AccessNinja, and Bunsen also actively encourage and induce the infringement of the 2024 Registration by promoting and aiding and abetting in AccessNinja's SaaS that infringes the PassNinja 2024 Registration.

83.     HF0, AccessNinja, and Bunsen financially benefit from the infringement of copyrighted work subject to the 2024 Registration and have the ability to control the infringement.

84.     Such acts constitute unauthorized reproduction and distribution and result in unauthorized copies.

85.     The AccessNinja Defendants' aforesaid activities constitute direct, contributory and vicarious infringement of PassNinja's copyrights in the 2024 Registration.

86.     At a minimum, the AccessNinja Defendants acted with willful blindness to and in reckless disregard of Plaintiff's registered copyrights.

87.     As a result of its wrongful conduct, the AccessNinja Defendants are liable to PassNinja for copyright infringement. 17 U.S.C. § 501.

88.     The AccessNinja Defendants' actual, contributory, and vicarious infringement of the copyrights represented by the 2024 Registration causes PassNinja irreparable harm.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

89.     PassNinja has suffered damages.  PassNinja is entitled to recover damages, which include PassNinja's actual damages and any additional profits of the AccessNinja Defendants or statutory damages as provided by 17 U.S.C. § 504.

90.     PassNinja is also entitled to injunctive relief pursuant to 17 U.S.C. § 502.

WHEREFORE, PassNinja prays that this Court enter Judgment that:

g.      The AccessNinja Defendants, their agents, servants, employees, franchisees, licensees, attorneys and all others, be enjoined and restrained, during the pendency of this action as preliminary injunction and permanently thereafter from:

   iv.      Using, copying or otherwise exploiting PassNinja's copyrights and copyrighted works;

   v.       Using, disclosing, converting, appropriating, retaining, selling, transferring or copying any property of PassNinja;

   vi.      Doing any other act or thing likely to, or calculated to, induce the belief that AccessNinja Defendants' business is in any way affiliated, connected or associated with PassNinja, or PassNinja's business;

h.      AccessNinja Defendants, their agents, servants, employees, franchisees, licensees, attorneys and all others be required to deliver for destruction all marketing materials, including but not limited to letterhead, business cards, signs, prints, packages, brochures, wrappers, receptacles, forms, files, advertisements and the like in their possession bearing any of PassNinja's copyrights, and any other reproduction, counterfeit, copy or colorable imitation of the PassNinja's copyrights.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

i.      The AccessNinja Defendants to be required to pay PassNinja's actual damages and any additional profits of the AccessNinja Defendants or statutory damages as provided in an amount of $150,000 for each willful infringement.

j.      AccessNinja Defendants jointly and severally be required to pay PassNinja its attorneys' fees and the costs of this action.

k.      AccessNinja Defendants remove all instances of PassNinja's copyrighted content from their websites, servers, social media, product listings, or anywhere else AccessNinja Defendants copied PassNinja's copyrighted works.

l.      PassNinja to have such other and further relief as this Court deems just, fair, and equitable.

## COUNT III REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION
### (Against Bunsen and AcccessNinja)

91.     PassNinja incorporates and realleges by reference paragraphs 1 to 60 above.

92.     The CMI is Copyright Management Information used by PassNinja for its source code.

93.     Bunsen individually and on behalf of AccessNinja created the Altered PassNinja Source Code by removing any and all CMI from the PassNinja Source Code.

94.     Bunsen individually and on behalf of AccessNinja knowingly and with the intent to induce, enable, facilitate, or conceal infringement provided and/or distributed copyright management information for the PassNinja Source Code that was false.

95.     Bunsen individually and on behalf of AccessNinja unlawfully without the authority of PassNinja, intentionally removed and/or altered the copyright management information for the PassNinja Source Code.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

96.     Bunsen individually and on behalf of AccessNinja unlawfully and without the authority of PassNinja, distributed, imported for distribution, and/or publicly performed works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of PassNinja.

97.     The natural, probable and foreseeable consequence of Busen and AccessNinja's wrongful conduct is to deprive and continue to deprive PassNinja of: (i) the benefits of its intellectual property; and, (ii) the licensing, marketing and promoting PassNinja's related services.

98.     Bunsen and AccessNinja knew or should have known that persons accessing the PassNinja Source Code would be directly infringing of PassNinja's copyrights under 17 U.S.C. § 106.

99.     Bunsen and AccessNinja knew or should have known that each person accessing the PassNinja Source Code would violate the integrity of the CMI under 17 U.S.C. § 1202.

100.    Bunsen and AccessNinja knew or should have known that people accessing the PassNinja Source Code would be directly infringing of PassNinja's copyrights under 17 U.S.C. § 106.

101.    Bunsen and AccessNinja knew or should have known that each use of the altered PassNinja Source Code would violate the integrity of the CMI under 17 U.S.C. § 1202.

102.    Bunsen and AccessNinja received, and continue to receive, a direct financial benefit from these violations.

103.    By distributing the integral material, or otherwise inducing that infringement, Bunsen and AccessNinja are vicarious and/or contributory violators of the integrity of the CMI.

104.    Bunsen and AccessNinja's willful, intentional, deliberate, and malicious acts of violation of the integrity of the CMI have and continue to damage PassNinja.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

105.     Bunsen and AccessNinja's acts of violation of the integrity of the CMI have damaged, and continue to damage, PassNinja in a manner that is irreparable in nature.

106.     PassNinja is without an adequate remedy at law.

WHEREFORE, PassNinja demands judgment against Bunsen and AccessNinja jointly and severally and seeks an Order:

a.     seizing, impounding, and then destroying of any device or product involved in the Bunsen and AccessNinja's violations;

b.     awarding, at Bunsen and AccessNinja's election, actual damages and Bunsen and AccessNinja's profits, or statutory damages of at least $25,000.00 for each violation;

c.     awarding costs and attorneys' fees pursuant to 17 U.S.C. § 1203; and,

d.     granting such other relief as this Court finds just, fair, and equitable.

## COUNT IV DMCA MISREPRESENTATIONS
### (AccessNinja and Bunsen)

107.     PassNinja incorporates and realleges by reference paragraphs 1 to 60 above.

108.     On or about October 28, 2024, Bunsen individually and on behalf of AccessNinja submitted a false DMCA notice to Amazon Web Services, Inc. demanding removal of PassNinja's own copyrighted work from PassNinja's website.

109.     On or about October 30, 2024, Bunsen individually and on behalf of AccessNinja submitted a false DMCA notice to Google, LLC demanding removal of PassNinja's own copyrighted work from PassNinja's website.

110.     On October 28, 2024, Bunsen individually and on behalf of AccessNinja submitted a false DMCA notice to Salesforce, Inc. demanding removal of PassNinja's own copyrighted work from PassNinja's website.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

111.    PassNinja's service provider(s) removed content belonging to PassNinja due to Bunsen and AccessNinja's fake DMCA notices.

112.    PassNinja suffered lost revenue and other damage due to the actions of Bunsen and AccessNinja initiating the false DMCA notices that caused the service providers of PassNinja's SaaS and website to be taken down.

113.    As a direct and proximate cause of AccessNinja and Bunsen's false DCMA Requests, PassNinja was damaged.

WHEREFORE PassNinja demands judgment against Bunsen and AccessNinja for its damages as a result of Bunsen and AccessNinja violation of 17 U.S.C. § 512(f), costs and attorneys' fees, and further relief as this Court deems just, fair, and equitable.

## COUNT V LANHAM ACT UNFAIR COMPETITION

(Against Bunsen and AccessNinja Directly and for
Contributory and Vicarious Infringement Against Bunsen, AccessNinja and HF0)

114.    PassNinja incorporates and realleges by reference paragraphs 1 to 60 above.

115.    AccessNinja is PassNinja's competitor in the market for, *inter alia*, NFC solutions, digital pass management, and digital wallet integration.

116.    Bunsen and AccessNinja's acts in using the AccessNinja and Ninja marks constitute a false designation of origin which is likely to cause confusion, mistake or deception in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

117.    Bunsen and AccessNinja offer goods and services using marks that are likely to be confused with **PassNinja™** and **Ninja™** in interstate commerce.  Bunsen and AccessNinja's use of marks that are confusingly similar to the **PassNinja™** and **Ninja™** marks constitutes false designation of origin, false or misleading description, and/or false or misleading representation as to the origin, association or sponsorship of the products.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

118.    Such unauthorized use causes, and is likely to cause, confusion, mistake, or deception of others, as to the affiliation, connection, or association of Bunsen and AccessNinja with **PassNinja™**, and is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the products of Bunsen and AccessNinja with those of **PassNinja™**.

119.    Such false designation, description, and/or representation constitutes a violation of Section 43(a) of PassNinja's right in its **PassNinja™** and **Ninja**, in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

120.    Bunsen and AccessNinja knew, or should have known, of PassNinja's rights.

121.    Bunsen and AccessNinja's false description, false representation, and false designation of origin were intentional, knowing, willful, and deliberate, making this an exception case with the meaning of 15 U.S.C. § 1117.

122.    PassNinja has been, and will continue to be, damaged by such false description, false representation, and false designation of origin in a manner and amount that cannot be fully measured or compensated in economic terms.  Bunsen and AccessNinja's actions have damaged, and will continue to damage, PassNinja's rights, reputation, and goodwill, and may discourage current and potential customers from dealing with PassNinja.

123.    Such irreparable harm will continue unless Bunsen and AccessNinja's acts are restrained and/or enjoined.

124.    As a result, PassNinja has suffered damages.

125.    PassNinja has no adequate, complete, remedy at law.  It has been irreparably harmed by Bunsen and AccessNinja's actions.

WHEREFORE, PassNinja prays that this Court:

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

a.      enjoin Bunsen and AccessNinja from using the PassNinja and Ninja trademarks; from making further false statements regarding ownership of the products; and using any false designation of origin or false description which is likely to lead to members of the public to believe the products offered by Bunsen and AccessNinja are related, in any way, to PassNinja;

b.      award PassNinja its lost profits due to Bunsen and AccessNinja's actions;

c.      that the Court deem this an exceptional case and award PassNinja its attorneys' fees and costs; and,

d.      grant such other relief as is fair, just and equitable.

### <u>COUNT VI COMMON LAW UNFAIR COMPETITION</u>
(Against Bunsen and AccessNinja Directly and for
Contributory and Vicarious Infringement Against Bunsen, AccessNinja and HF0)

126.    PassNinja incorporates and realleges by reference paragraphs 1 to 60 above.

127.    AccessNinja is PassNinja's competitor in the market for, *inter alia*, NFC solutions, digital pass management, and digital wallet integration.

128.    The AccessNinja Defendants have engaged in acts which constitute unfair competition under the laws of the State of Florida. Specifically, the AccessNinja Defendants have unlawfully used intellectual property belonging to PassNinja to obtain competitive advantage for their own products and services in the market.

129.    The AccessNinja Defendants passed off PassNinja's work as the AccessNinja's Defendants' own intellectual property.

130.    The AccessNinja Defendants have used PassNinja's intellectual property for their own benefit without compensation to PassNinja.

131.    The AccessNinja Defendants' unauthorized use of PassNinja's intellectual property and marketing of competing products under marks such as AccessNinja is likely to be confused with **PassNinja™** and **Ninja** constitutes acts of unfair competition.

132.    The AccessNinja Defendants' actions have been conducted with malice and ill will.

133.    PassNinja has been damaged as a direct result of the AccessNinja Defendants' actions.

WHEREFORE, PassNinja demands judgment against the AccessNinja Defendants jointly and severally:

a.    compelling the AccessNinja Defendants to deliver all infringing materials to PassNinja, or in the alternative, destruction thereof;

b.    enjoining the AccessNinja Defendants preliminary and permanently from any use of any mark confusingly similar to the PassNinja or Ninja marks;

c.    awarding actual damages in an amount of at least $1,000,000.00;

d.    awarding prejudgment interest;

e.    awarding costs; and,

f.    granting such other relief as this Court finds just, fair, and equitable.

### COUNT VII MISAPPROPRIATION PUSUANT TO FLORIDA'S UNIFORM TRADE SECRETS ACT
(Against Bunsen and AccessNinja Directly and for
Contributory and Vicarious Misappropriation Against Bunsen, AccessNinja and HF0)

134.    PassNinja incorporates and realleges by reference paragraphs 1 to 60 above.

135.    Bunsen and AccessNinja stole PassNinja's Source Code, customer lists/information, development plans and other proprietary information, which are trade secrets within the meaning of Florida Statutes, Section 688.002(4) (the "***Trade Secrets***").

136.    The Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other people who can obtain economic value from their disclosure or use.

137.    PassNinja took efforts that were reasonable under the circumstances to maintain the secrecy of the Trade Secrets, including restricting access to the source code, among other security measures, including that the code was stored within private accounts that were password protected and required two-factor authentication.

138.    Bunsen and AccessNinja misappropriated the Trade Secret through improper and unauthorized means, including through Bunsen's violation of his PassNinja's trust and Bunsen's fiduciary duty as an officer of PassNinja with an equitable interest and one third voting rights.

139.    On information and belief, Bunsen and AccessNinja have shared the trade secrets with HFO.

140.    The AccessNinja Defendants knew or had reason to know that they acquired the Trade Secrets through improper means.

141.    The AccessNinja Defendants knew or should have known that the Trade Secrets were regarded as Trade Secrets as AccessNinja and Bunsen have asserted in this action that a substantial portion of the misappropriated Trade Secrets belong to them and should be regarded as Trade Secrets.

142.    As a result of the misappropriation of the Trade Secrets by the AccessNinja Defendants, PassNinja has suffered and continues to suffer damages.

WHEREFORE PassNinja demands a judgment against the AccessNinja Defendants for damages in an amount to be proven at trial; exemplary damages, including attorney's fees, costs, and interest; and such other additional relief as this Court deems just and appropriate.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

## COUNT VIII TORTIOUS INTERFERENCE
(HF0)

143.     PassNinja incorporates and realleges by reference paragraphs 1 to 60 above.

144.     HF0 knew or should have known that PassNinja is in the business of providing *inter alia*, NFC solutions, digital pass management, and digital wallet integration.

145.     HF0 knew or should have known of the Agreement and Bunsens' fiduciary obligations to PassNinja.

146.     Despite this knowledge, HF0 acted in a manner designed to disrupt PassNinja's existing and future business relationships regarding services and products related to PassNinja's inter alia NFC solutions, digital pass management, and digital wallet integration.

147.     HF0 knew or should have known that PassNinja has and had existing and prospective business relations with PassNinja's customers and users of the PassNinja website and SaaS.

148.     Through HF0's investment in the infringement and misappropriation and HF0's inducement of others to support AccessNinja's infringing work HF0 has interfered, hijacked with and, unless enjoined by the Court, will continue to interfere with, PassNinja's existing and prospective business relationships by misappropriating PassNinja's trade secrets, sabotaging relationships, and feeding confidential and/or privileged information and misinformation to third parties.

149.     As a direct and proximate result of HF0's tortious conduct, as described hereinabove, PassNinja has been irreparably injured.

150.     HF0's conduct is willful, intentional and in wanton disregard for PassNinja's rights.

151.     PassNinja is without an adequate remedy at law.

**WHEREFORE**, PassNinja demands judgment against HF0:

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

a.   compelling HF0 to deliver all misappropriated materials to PassNinja, or in the alternative, destruction thereof;

b.   enjoining HF0, preliminarily and permanently, from any further interference with PassNinja's prospective or existing business relations;

c.   enjoining HF0 from disclosure of all privileged and/or confidential information or communications;

d.   awarding actual, consequential and punitive damages;

e.   awarding prejudgment interest;

f.   awarding costs; and,

g.   granting such other relief as this Court finds just, fair, and equitable.

## COUNT IX TORTIOUS INTERFERENCE
### (Bunsen and AccessGrid)

152.   PassNinja incorporates and realleges by reference paragraphs 1 to 60 above.

153.   Bunsen knew or should have known that HF0 was interested in investing in PassNinja's technology, branding, know how, relationships, trade secrets and creative works.

154.   Yet, Bunsen created AccessNinja to divert that investment to a new company owned solely by Bunsen.

155.   Bunsen knew or should have known that PassNinja is in the business of providing *inter alia*, NFC solutions, digital pass management, and digital wallet integration.

156.   Bunsen and AccessNinja knew or should have known that PassNinja has and had existing and prospective business relations with PassNinja's customers and users of the PassNinja website and SaaS.

157.   Despite this knowledge, Bunsen has acted in a manner designed to disrupt PassNinja's existing and future business relationships as regards to services and products related

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

to PassNinja's products including *inter alia*, NFC solutions, digital pass management, and digital wallet integration.

158.    Bunsen has interfered with and, unless enjoined by the Court, will continue to interfere with PassNinja's existing and prospective business relationships by misappropriating and/or diminishing the value of PassNinja's intellectual property, misleading consumers that have existing or prospective business relationships with PassNinja, and sending false DMCA takedown notices.

159.    As a direct and proximate result of the Bunsen and AccessNinja's tortious conduct, as described hereinabove, PassNinja has been irreparably injured.

160.    Bunsen and AccessNinja's conduct is willful, intentional and in wanton disregard for PassNinja's rights.

161.    PassNinja is without an adequate remedy at law.

**WHEREFORE**, PassNinja demands judgment against the Bunsen and AccessNinja jointly and severally:

a.    compelling AccessNinja and Bunsen to deliver all infringing materials to PassNinja, or in the alternative, destruction thereof;

b.    enjoining Bunsen and AccessNinja, preliminarily and permanently, from any further interference with PassNinja's prospective or existing business relations;

c.    awarding actual and punitive damages in an amount of at least $1,000,000.00;

d.    awarding prejudgment interest;

e.    awarding costs; and,

f.    granting such other relief as this Court finds just, fair, and equitable.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

## COUNT X BREACH OF FIDUCIARY DUTY
### (PassNinja and Grundy against Bunsen)

162. PassNinja and Grundy incorporate and reallege by reference paragraphs 1 to 60 above.

163. Pursuant to the Agreement Bunsen, Grundy and PassNinja entered into a professional relationship whereby Bunsen was placed in a position of to work in the best interest of PassNinja in the development of its software. Alternatively, Bunsen owed Grundy a fiduciary duty as a partner.

164. Bunsen accepted that trust and represented and warranted that he was conducting his best efforts to develop the PassNinja software with the direction, guidance and approval of Grundy.

165. As an officer of PassNinja with access to substantially all of its proprietary accounts, source code, passwords, partnerships and trade secrets, Bunsen owed fiduciary duties to PassNinja including the duty of loyalty, heightened level of trust, confidence, disclosure and duty of good faith and fair dealing.

166. Bunsen, however, breached his fiduciary duty by creating AccessNinja and using PassNinja's assets and resources for his own personal benefit and to steal away a corporate opportunity for PassNinja with HF0 to AccessNinja.

167. As a result of such breach of fiduciary duty, PassNinja and Grundy have sustained substantial damages for and irreparable harm.

WHEREFORE, PassNinja and Grundy demand judgment in their favor and against Bunsen for damages, plus pre-judgment interest, plus costs for having to bring this lawsuit, and such further relief as this Court deems just, fair and equitable.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

## <u>COUNT XI UNJUST ENRICHMENT</u>
### (against the AccessNinja Defendants)

168.    PassNinja incorporate and reallege by reference paragraphs 1 to 60 above.

169.    Pursuant to the Agreement with Bunsen, PassNinja provided Bunsen with access to its source code, passwords, trade secrets, proprietary customer information, development plans, partnerships and business opportunities (collectively the "***PassNinja Assets***").

170.    The AccessNinja Defendants used Bunsen's access to PassNinja Assets for their own benefit and to the detriment of PassNinja

171.    PassNinja trusted Bunsen and justifiably relied on the Agreement.

172.    The AccessNinja Defendants accepted and retained the benefit of the PassNinja Assets which under the circumstances is inequitable.

173.    The AccessNinja Defendants have been unjustly enriched by their use of the PassNinja Assets.

174.    AccessNinja Defendants activities alleged in this count have been without license permission or authorization from PassNinja.

175.    The activities of Bunsen as set forth in this Count have been to the injury, detriment and irreparable harm of PassNinja.

176.    PassNinja has no adequate remedy at law.

WHEREFORE, PassNinja demands judgment, prays for relief against the AccessNinja Defendants, and respectfully requests that the Court:

A.    award damages to PassNinja from Bunsen jointly and severally as PassNinja suffered in amount of at least one-million-dollars ($1,000,000.00).

B.    award PassNinja its costs the AccessNinja Defendants; and,

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

C.      award in favor of PassNinja and against the AccessNinja Defendants such other

further relief as is just, fair or equitable.

**COUNT XII DECLARATORY JUDGMENT OF INVALIDITY**

177.    PassNinja incorporates and realleges by reference paragraphs 1 to 60 above.

178.    There exists a real and actual controversy between PassNinja, Grundy and

AccessNinja concerning the validity of TXu2-453-83.

179.    PassNinja is entitled to a declaratory judgment that the TXu 2-453-833 copyright

was obtained by fraud, based upon Bunsen and AccessNinja's material misrepresentation to the

United States Copyright Office, and that the registration is invalid and/or not owned by

AccessNinja. See, e.g., paragraphs 46-54 above.

WHEREFORE, PassNinja respectfully requests this Court: i) enter a declaratory judgment

and decree holding that the TXu2-453-83 is invalid; and ii) grant such further relief as is just, fair,

and equitable.

**COUNT XIII DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

180.    PassNinja and Grundy incorporates and realleges by reference paragraphs 1 to 60

above.

181.    There exists a real and actual controversy between PassNinja, Grundy and

AccessNinja concerning the infringement of TXu2-453-833.

182.    PassNinja is entitled to a declaratory judgment that PassNinja does not infringe

TXu2-453-833.

183.    Notably, in addition to the allegations in paragraphs 1 to 60, on its face TXu2-453-

833 claims to be a joint work made for hire between AccessNinja and Bunsen, which would have

had to have been created entirely after Bunsen was working on PassNinja and for which PassNinja

and Grundy never had access.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2ⁿᵈ Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

WHEREFORE, PassNinja respectfully requests this Court: i) enter a declaratory judgment and decree holding that TXu2-453-833 is not infringed by PassNinja and Grundy; and ii) grant such further relief as is just, fair, and equitable.

## COUNT XIV DECLARATORY JUDGMENT OF RIGHTS UNDER THE AGREEMENT
### (and ownership and/or license of copyrights)

184.    PassNinja and Grundy incorporate and reallege by reference paragraphs 1 to 60 above.

185.    There exists a real and actual controversy between Third-Party Plaintiffs and Bunsen concerning their rights under the Agreement.

186.    The Third-Party/Counter-Plaintiffs are entitled to a declaratory judgment that the Agreement with Bunsen is valid and that Bunsen breached the Agreement when he repudiated it.

187.    The Third-Party Counter-Plaintiffs are entitled to an accounting of Bunsen's equity interest in PassNinja and whether or how it may dispose of that equity interest given Bunsen's express abandonment and repudiation of the same.

188.    The Third-Party/Counter-Plaintiffs are entitled to a declaratory judgment that PassNinja owns all rights in the works created pursuant to the Agreement either, as: a work made for hire; a specially commissioned work made for hire; a work created by a dominant author versus a co-author; or merely derivations or improvements made to an existing work at the authority of the owner of the original copyrights.

189.    In the alternative, Third-Party/Counter-Plaintiffs are entitled to a declaratory judgment as to the scope of any license to the derivative work made pursuant to the Agreement.

WHEREFORE, Third-Party/Counter-Plaintiffs respectfully requests this Court: i) enter a declaratory judgment and decree holding that the Agreement is valid; ii) enter a declaratory judgment and decree as to an accounting of Bunsen's equity in PassNinja, if any, pursuant to the

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

Agreement; iii) enter a declaratory judgment and decree as to ownership of the works made pursuant to the Agreement and any respective licenses thereto; and iv) grant such further relief as is just, fair, and equitable.

Dated: February 24, 2025                    **ASSOULINE & BERLOWE, P.A.**

                        By:    s/ Peter A. Koziol
                               Peter A. Koziol (FBN 030446)
                               pak@assoulineberlowe.com
                               Miami Tower
                               100 SE 2nd Street, Suite 3650
                               Miami, FL 33131
                               Telephone: (305) 567-5576
                               Facsimile: (305) 567-9343

                               **Attorneys for Defendants**
                               **Third-Party/Counter-Plaintiffs**
                               **Richard Grundy, and**
                               **PassNinja, Inc.**

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343