UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-24745-ALTMAN

ACCESSNINJA, INC. d/b/a
ACCESSGRID,

    *Plaintiff*,

v.

PASSNINJA, INC. and RICHARD
GRUNDY,

    *Defendants*.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

The Defendants, PassNinja, Inc. and Richard Grundy, have moved to dismiss the Plaintiff's Complaint. *See* Motion to Dismiss [ECF No. 13] at 6. They ask, in the alternative, for a more definite statement. *Ibid.* For the reasons we outline below, the Motion to Dismiss is **DENIED** as to Counts I and II and **GRANTED** as to Count III. We also **DENY** the Defendants' request for a more definite statement.

### THE FACTS

Our Plaintiff, AccessNinja, is "engaged in the business of developing and exploiting an application programming interface ('API') that allows for the issuance and management of Near Field Communication ('NFC') passes." Complaint [ECF No. 1] ¶ 2. NFC passes are "essentially digital 'tickets' that can be distributed and scanned at events, attractions, and experiences." *Ibid.* They can also be used "as digital 'keys' to open physical doors." *Ibid.* Defendant PassNinja "is a competitor of [AccessNinja] in the NFC space." *Id.* ¶ 3. AccessNinja's founder and CEO, Auston Bunsen, and Defendant Grundy have known each other for "approximately fifteen years." *Id.* ¶ 13. In or around January 2020, Bunsen helped Grundy develop "high level strategy" for PassNinja but was "not

interested" in coding for PassNinja at the time. *Id.* ¶ 14. Despite Bunsen's assistance, Grundy was not successful in building PassNinja into a "viable, operating business." *Id.* ¶¶ 14–15.

Bunsen, however, "remained interested in NFC technology" and began writing programming code for the technology in early 2023 (the "Copyrighted Work"). *Id.* ¶ 16. Nobody else "substantially contributed or assisted" Bunsen in writing the Copyrighted Work. *Id.* ¶ 22. While he was writing the Copyrighted Work in or around February 2023, Bunsen approached Grundy and proposed "that they work together to build PassNinja." *Id.* ¶ 17. Bunsen would contribute the Copyrighted Work he "started writing in exchange for fifty-one percent (51%) of the stock in PassNinja." *Ibid.* Bunsen and Grundy recognized the need to memorialize any potential agreement with "appropriate documentation" and negotiated for months thereafter. *Id.* ¶ 19. While these negotiations were ongoing, Bunsen granted Grundy "limited access" to the Copyrighted Work "for the limited and exclusive purpose or writing tutorials for potential customers to learn about [NFC] technology and its commercial applications." *Id.* ¶ 20. This was done "in a good faith effort to collaborate on the contemplated new venture." *Ibid.*

The negotiations between Bunsen and Grundy "ultimately fell apart in the summer of 2024," and the parties "never reached or executed a final agreement regarding equity in PassNinja or its right to use [the Copyrighted Work]." *Id.* ¶ 23. Bunsen decided to "build his own business" using the Copyrighted Work and "incorporated [AccessNinja] for that purpose on or about August 26, 2024." *Id.* ¶ 24. As the author of the Copyrighted Work, Bunsen was the owner of all copyrights in it "until he assigned those rights to [AccessNinja] on August 27, 2024." *Id.* ¶ 25. AccessNinja successfully registered the Copyrighted Work with the U.S. Copyright Office on October 30, 2024. *Id.* ¶ 26; *see also* Certificate of Registration [ECF No. 1-1] at 1-2.

On September 8, 2024, AccessNinja "revoked the limited authorization Bunsen had previously granted to Grundy" to access the Copyrighted Work. Complaint ¶ 28. Despite being offered the

2

opportunity to license the Copyrighted Work "for a monthly fee," Grundy and PassNinja instead copied and "exploited it for their own commercial purposes." *Id.* ¶¶ 28–29. The Copyrighted Work is now "the primary economic engine for PassNinja's business." *Id.* ¶ 29. Upon learning of the Defendants' use of the Copyrighted Work, AccessNinja "issued multiple notices of infringement to PassNinja in accordance with the Digital Millennium Copyright Act ('DMCA')." *Id.* ¶ 4. But PassNinja "continues to promote" the Copyrighted Work on its website. *Id.* ¶ 37.

AccessNinja brought this action to "end PassNinja's willful and unlawful infringement of [the Copyrighted Work] and recover damages for the harm caused to date." *Id.* ¶ 38. Its Complaint asserts three claims against the Defendants: "Copyright Infringement under 17 U.S.C. § 101 et seq. (Against PassNinja)" (Count I); "Contributory Copyright Infringement (Against Grundy)" (Count II); and "Misappropriation of Trade Secrets under FUTSA (Against All Defendants)" (Count III). *See* Complaint at 7–11. In response to AccessNinja's allegations, the Defendants have moved to dismiss the Complaint—and, assuming we give AccessNinja leave to amend, they ask us to require AccessNinja to provide a more definite statement. *See* Motion to Dismiss at 6.[1]

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than

---

[1] The Motion to Dismiss has been fully briefed and is ripe for review. *See* Response in Opposition to Motion to Dismiss ("Response") [ECF No. 26]; Reply to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Reply") [ECF No. 27].

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). "The motion is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Twombly*, 550 U.S. 544, 570 (2007)).

## ANALYSIS

### I. The Motion to Dismiss

#### A. Count I: Direct Copyright Infringement

To state a claim for copyright infringement under the Copyright Act, a plaintiff "must allege facts showing (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Jackson v. JPay, Inc.*, 851 F. App'x 171, 173 (11th Cir. 2021) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The first element ("ownership of a valid copyright") is a relatively simple task. A certificate of registration under the seal of the U.S. Copyright Office stands as "prima facie evidence of the validity of the copyright." *Strategic Mktg., Inc. v. Great Blue Heron Software*, 2015 WL 11438209, at *4 (S.D. Fla. May 12, 2015) (Bloom, J.) (citing 17 U.S.C. § 410(c)). The standard for originality (the second element) "is low, but it does exist." *Feist*, 499 U.S. at 362. It requires the author to have exhibited "some minimal degree of creativity." *Ibid.* (citing *In re Trade–Mark Cases*, 100 U.S. 82, 94 (1879)). An author claiming infringement must prove "the existence of . . . intellectual

4

production, of thought, and conception." *Ibid.* (cleaned up) (citing *Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 59–60 (1884)).

The Defendants first ask us to dismiss Count I because the allegations of "the Complaint and Copyright Registration Nullify Each Other." Motion to Dismiss at 2. Relying on AccessNinja's certificate of registration with the U.S. Copyright Office, the Defendants point out that both Auston Bunsen and AccessNinja are listed as co-authors of the Copyrighted Work. *See* Certificate of Registration [ECF No. 1-1] at 1. This is a problem, the Defendants say, because the Complaint says that "AccessNinja did not exist when the work was created[.]" Motion to Dismiss at 2 (citing Complaint ¶¶ 24–26). As a result, the Defendants assert that "AccessNinja cannot be a joint author to the work that the Defendants are accused of infringing, or the Copyrighted Work is inapplicable and/or its registration invalid on its face." Reply at 1.

AccessNinja responds that this argument "is far from clear" and that the Defendants "do not cite any authority to support their request that this Court dismiss [the] copyright infringement claims based on Defendants' assertion that [AccessNinja's] certificate of registration and complaint 'nullify each other.'" Response at 5–6. Our best reading of this "nullification" argument is that the Defendants believe that AccessNinja's copyright registration is invalid because it falsely suggests that AccessNinja "is a joint-author of the Copyrighted Work[.]" Reply at 2. But this isn't an appropriate argument at the motion-to-dismiss stage. Here, remember, we must "accept the factual allegations in the Complaint as true and construe them in the light most favorable to [AccessNinja]." *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023). Given this standard, courts in our District have consistently held that "a motion to dismiss is not the proper vehicle for challenging the validity of [the plaintiff's] copyright or the substance of a copyright infringement claim." *Stripteaser, Inc. v. Strike Point Tackle, LLC*, 2014 WL 866396, at *4 (S.D. Fla. Mar. 5, 2014) (Altonaga, J.); *see also Strategic Mktg.,* 2015 WL 11438209, at *4 (same); *Phoenix Ent. Partners, LLC v. Gulfcoast Spirits, LLC*, 2019 WL 8161158, at *4 (N.D. Fla. Jan. 2,

5

2019) (Rodgers, J.) ("Regarding copyright validity, a plaintiff may establish a prima facie case of validity of its copyright by producing a copyright certificate, thereby shifting the burden to the defendant to raise the issue of registration validity *as an affirmative defense*." (emphasis added)).[2]

AccessNinja has attached a copy of its registration certificate for the Copyrighted Work to the Complaint. *See* Certificate of Registration at 1–2; *see also* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of a pleading for all purposes."). This is prima facie evidence of valid ownership of the copyright and is sufficient—standing alone—to survive an attack under Rule 12(b)(6). *See Strategic Mktg.,* 2015 WL 11438209, at *4 ("Strategic has obtained such registration for the disputed material, and these certificates stand as 'prima facie evidence of the validity of the copyrights.'" (cleaned up) (quoting 17 U.S.C. § 410(c))). Since the alleged inconsistency between the Complaint and the copyright registration is insufficient to overcome the registration's presumptive validity, we won't dismiss Count I on this ground.

The Defendants next ask us to dismiss Count I because "[t]here are No Plausible Allegations of Copying." Motion to Dismiss at 3. In saying so, the Defendants insist that the "functional processes" of the Copyrighted Work are "not subject to copyright." *Ibid.* The Defendants' position, in other words, is that the Copyright Work's function of "[e]fficiently creating, issuing, and revoking passes for Apple Wallet and Google Wallet is not Copyrightable Subject Matter" because it isn't an "original creative expression[.]" *Id.* at 3–4; *see also id.* at 3 ("[T]he portion of the copyrighted work that is copied must 'satisfy the constitutional requirement of originality as set forth in Article I, § 8, cl. 8 . . . the mere fact that that a work is copyrighted does not mean that every element of the work may be protected.'"). AccessNinja counters that the "Defendants have retained and continued to exploit *the*

---

[2] "Generally, the existence of an affirmative defense will not support a motion to dismiss." *Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1225 n.8 (11th Cir. 2016) (cleaned up).

*entire* Copyrighted Work after Bunsen revoked PassNinja's limited revocable license to use it on September 8, 2024." Response at 6 (emphasis added).

The Defendants' argument, in other words, focuses on the originality element of copyright infringement. But AccessNinja has pled enough facts to survive dismissal on this element. It claims, for instance, that Grundy created a plan for "managing contract software developers to write programming code" but was ultimately "unsuccessful in building PassNinja into a viable, operating business" on his own. Complaint ¶¶ 14, 15. Bunsen then began writing the programming code that would become the Copyrighted Work on his own, spending "approximately 1,800 [sic] hours coding." *Id.* ¶ 21. These two allegations indicate that the code that formed the basis of the Copyrighted Work—which was necessary to build the foundation for a business like AccessNinja—required substantial effort to author, either through a team of developers or alone through extensive man-hours. There would be no need for such extensive work if a similar code already existed, meaning that (according to the allegations of the Complaint) authoring the code involved some degree of creativity. *See Feist*, 499 U.S. at 362 ("[T]he Constitution mandates some minimal degree of creativity, and an author who claims infringement must prove the existence of intellectual production, of thought, and conception." (cleaned up)). And, even if the Copyright Worked were merely the product of compiling extant code, it would still satisfy the originality standard as a "compilation." *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1140–41 (11th Cir. 2007) ("While the [Copyright Act of 1976] protects original expression, it is well established that this protection does not extend to any underlying facts or ideas . . . Compilations of facts, however, may be copyrightable."); *see also Feist*, 499 U.S. at 344 ("[F]acts are not copyrightable; . . . compilations of facts generally are."). AccessNinja has thus satisfied both elements of a direct copyright-infringement claim, and we accordingly **DENY** the Motion to Dismiss as to Count I.

### B. Count II: Contributory Copyright Infringement

To prevail on a claim for contributory copyright infringement, the plaintiff must allege two elements: "(i) direct infringement and (ii) intentional inducement or encouragement." *Microsoft Corp. v. Guirguis*, 2022 WL 1664181, at *3 (S.D. Fla. Mar. 30, 2022) (Altonaga, C.J.). As we've explained, direct infringement requires the plaintiff to show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Jackson*, 851 F. App'x at 173. To allege intentional inducement or encouragement, on the other hand, the plaintiff must allege that the defendant is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (cleaned up) (quoting *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987)). The standard for "knowledge" is objective: the defendant must "[k]now, or have reason to know" of the infringing activity. *Ibid.* (cleaned up). To meet this standard, the plaintiff may describe the affirmative steps he has taken to encourage infringement, "such as advertising an infringing use or instructing how to engage in an infringing use, show[ing] an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005).

Because we have determined that AccessNinja plausibly pled direct infringement, it has met the first element of a contributory copyright-infringement claim. *See Cable/Home*, 902 F.2d at 845 ("Contributory infringement necessarily must follow a finding of direct or primary infringement."). And, since the Defendants fail to argue that AccessNinja didn't allege "intentional inducement or encouragement," *see generally* Motion to Dismiss at 2–4 (only challenging Counts I and II on the grounds that the "Allegations of the Complaint and Copyright Registration Nullify Each Other" and that "There are No Plausible Allegations of Copying."); Reply at 1–3 (same), the Defendants have forfeited their right to challenge the sufficiency of this second element, *see United States v. Campbell*, 26

F.4th 860, 873 (11th Cir. 2022) (en banc) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").[3]

Accordingly, we **DENY** the Motion to Dismiss as to Count II.

### C. Count III: Misappropriation of Trade Secrets under FUTSA

The Defendants next argue that AccessNinja didn't identify a protectable trade secret under the Florida Uninform Trade Secrets Act ("FUTSA"). They contend that the basis of AccessNinja's FUTSA claim—that the Defendants allegedly misappropriated the Copyrighted Work's "electronic code"—is improperly "broad" because AccessNinja has not alleged which "electronic code"

---

[3] Even if the Defendants had challenged the "intentional inducement or encouragement" element, we'd still find that AccessNinja alleged enough facts to survive a motion to dismiss. Specifically, Bunsen notified Grundy, on September 8, 2024, that AccessNinja revoked the limited authorization Bunsen had previously granted him. *See* Complaint ¶ 28. Bunsen also "offered Grundy and PassNinja the opportunity to license the Copyrighted Work from [AccessNinja] for a monthly fee," but the Defendants never paid for or obtained that license. *Id.* ¶¶ 28–29. Instead, "Grundy and PassNinja unlawfully copied the Copyrighted Work and exploited it for commercial purposes." *Id.* ¶ 29. When Bunsen began submitting DMCA notices to service providers to remove the Copyrighted Work from Passninja's website, "Grundy and PassNinja submitted a DMCA Counter Notice . . . falsely representing, under penalty of perjury, that PassNinja owned the Copyrighted Work and demanding that it be restored." *Id.* ¶ 35. These allegations are sufficient to establish that Grundy had knowledge of the infringing activity and contributed to PassNinja's alleged infringement. *See Cable/Home*, 902 F.2d at 845 ("This court has stated the well-settled test for a contributory infringer as one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." (cleaned up)).

PassNinja purportedly misappropriated. Motion to Dismiss at 4–5. The Defendants also contend that AccessNinja failed to identify *any* measure it took "to protect Plaintiff's trade secrets vis-à-vis Defendants." *Id.* at 5 (cleaned up). AccessNinja counters that its Complaint specifically alleges that the "Defendants misappropriated the Copyrighted Work" by falsely representing that the "Defendants would transfer 51% of PassNinja's stock to Bunsen" and by continuing "to use the Copyrighted Work without authorization or consent after Bunsen revoked the limited revocable license he had granted to PassNinja." Response at 8.

To state a claim under FUTSA, a plaintiff must allege that "(1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018). FUTSA defines a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

FLA. STAT. § 688.002(4); *accord Yellowfin Yachts*, 898 F.3d at 1297. Misappropriation generally means that the secret was acquired by "a person who knows or has reason to know that the trade secret was acquired by improper means[.]" FLA. STAT. § 688.002(2); *see also Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017) ("'Misappropriation' [under FUTSA] generally means that the secret was acquired by someone who knows or has reason to know that the secret was improperly obtained or who used improper means to obtain it.").

We agree with the Defendants that the Complaint lacks sufficient allegations that AccessNinja took "any measures, let alone reasonable measures, to protect [AccessNinja's] trade secrets vis-à-vis

10

Defendants." Motion to Dismiss at 5 (cleaned up).[4] AccessNinja argues that it took reasonable steps to protect the Copyrighted Work, "including restricting accesses to the code, among other security measures, including that the code was stored within a private GitHub account that was password protected and required two-factor authentication." Response at 9 (citing Complaint ¶ 60). While these allegations show that AccessNinja tried to maintain the secrecy of the Copyright Work in general, AccessNinja "has not pled that it took any steps to safeguard its trade secrets between *itself and Defendants*." *Surfaces, Inc. v. Point Blank Enters., Inc.*, 2022 WL 18956038, at *5 (S.D. Fla. Dec. 27, 2022) (Smith, J.) (emphasis added). On the contrary, AccessNinja's Complaint fails to allege that it conveyed the confidentiality of the Copyrighted Work to the Defendants and instead indicates that the Defendants were licensed to access the Copyrighted Work—albeit on a limited basis. *See* Complaint ¶ 20 ("During that time, in a good faith effort to collaborate on the contemplated new venture, Bunsen granted Grundy limited access to the Copyrighted Work for the limited and exclusive purpose of writing tutorials for potential customers to learn about NCF technology and its commercial applications."); *id.* ¶ 28 ("On September 8, 2024, Bunsen notified Grundy that [AccessNinja], as the owner of the copyrights, revoked the limited authorization Bunsen had previously granted to Grundy to access the Copyrighted Work for the limited, sole and exclusive purpose of writing customer tutorials. Bunsen offered Grundy and PassNinja the opportunity to license the Copyrighted Work from [AccessNinja] for a monthly fee."). We cannot say that the Complaint establishes that, in its dealings with the Defendants, AccessNinja took reasonable measures to protect the secrecy of the Copyrighted Work.

---

[4] On the other hand, we reject the Defendants' argument that an "electronic code" is too "broad" to be a trade secret. *See* Motion to Dismiss at 4–5. "Whether a particular type of information constitutes a trade secret is a question of fact and cannot be resolved on a motion to dismiss." *Greenberg v. Miami Children's Hosp. Rsch. Inst., Inc.*, 264 F. Supp. 2d 1064, 1076 (S.D. Fla. 2003) (Moreno, J.) (citing *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1294 (S.D. Fla. 2001) (Gold, J.)).

11

The cases the Defendants cite in their Motion to Dismiss support this conclusion. In *Yellowfin Yachts*, for instance, the Eleventh Circuit affirmed the district court's grant of summary judgment on a FUTSA claim where "no reasonable jury could find that [the plaintiff] employed reasonable efforts to secure the information" vis-à-vis the defendant, a former employee. *Yellowfin*, 898 F.3d at 1301. Although the plaintiff "limit[ed] employee access to the information and password-protect[ed] the computer network on which the information resided," it (like AccessNinja here) failed to get the defendant to sign an agreement to "keep all Yellowfin trade secrets in confidence" and did not instruct the defendant to keep the information "confidential" or "secure[d] on his personal devices." *Id.* at 1300.

Other cases have similarly held that, to state a valid FUTSA claim, a plaintiff in a FUTSA case *must* allege that the defendant had notice that the information at issue was confidential. *See, e.g., Greenberg*, 264 F. Supp. 2d at 1077 ("[T]here is no allegation that MCH knew or should have known that the Canavan Registry was a confidential trade secret guarded by Plaintiffs[.]"); *Surfaces*, 2022 WL 18956038, at *5 ("While Plaintiff was aware that Defendants had possession of the Demo Kit, the only step Plaintiff took to protect its trade secrets was to ask Defendants to return the Demo Kit after Defendants told Plaintiff that they would be putting the business discussions with Plaintiff on hold until Plaintiff and the Trigon Defendants resolved their issues."). Since the Complaint lacks these crucial allegations, AccessNinja hasn't stated a viable FUTSA claim—at least not yet. *Cf. Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1287 (S.D. Fla. 2010) (King, J.) ("Thus, the Complaint alleges that Plaintiffs took reasonable steps to protect the information by having Kromka sign the Non–Disclosure Agreement and instructing Defendants not to disclose the information to third parties.").[5]

---

[5] We therefore do not reach the second element, which asks whether the trade secret was misappropriated. *See Yellowfin Yachts*, 898 F.3d at 1297.

A dismissal under Rule 12(b)(6) is normally "on the merits and with prejudice," *White v. Lemma*, 947 F.3d 1373, 1377 (11th Cir. 2020), and we are "not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend or requested leave to amend before the district court," *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (cleaned up). Nevertheless, we can (and will) exercise our discretion in this case to "give" AccessNinja leave to amend Count III. FED. R. CIV. P. 15(a)(2); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) ("[T]rial courts have broad discretion in permitting or refusing to grant leave to amend."). Accordingly, we'll dismiss Count III **without prejudice** and **GRANT** AccessNinja leave to file an amended complaint that addresses the deficiencies we've identified in Count III.

## II. The Request for a More Definite Statement

A motion for a more definite statement under Rule 12(e) is appropriate only "if a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." *Hernandez v. Two Brothers Farm, LLC*, 579 F. Supp. 2d 1379, 1381 (S.D. Fla. 2008) (Martinez, J.) (cleaned up); *see also Anderson v. District Bd. of Trustees*, 77 F.3d 364, 366 (11th Cir. 1996) (stating that a motion for more definite statement is appropriate if it is "virtually impossible to know which allegations of fact [in the complaint] are intended to support which claim(s) for relief."). The Defendants' request for a more definite statement is just a demand that AccessNinja attach to the complaint the proposal Bunsen made to Grundy. *See* Motion to Dismiss at 6 ("The Complaint intentionally fails to attach the proposal and agreement described in paragraph 17. To the extent a writing exists and if there was any written acceptance by the Defendants, to avoid unreasonable and multiplicity of the proceedings the Plaintiff should be required to attach it to its Complaint to make a more definite statement, if it can.").

But this isn't an appropriate basis for requiring a more definite statement. The Plaintiff's failure to attach the proposal doesn't make the Complaint "so vague or ambiguous" that the Defendants

13

cannot reasonably be required to "frame a responsive pleading." *Hernandez*, 579 F. Supp. 2d at 1381. The Complaint's description of the proposal is sufficiently clear to identify the source of AccessNinja's claims, and the Complaint's failure to attach the proposal doesn't prevent the Defendants from responding to the Complaint. Nor can we say that, without the proposal, it would be "virtually impossible" to know which allegations support each claim. *Anderson*, 77 F.3d at 366. AccessNinja's Complaint is well-pled, and Counts I and II are adequately supported by the Plaintiff's factual allegations. Accordingly, the Defendants' request for a more definite statement is **DENIED**.

## CONCLUSION

Accordingly, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendants' Motion to Dismiss [ECF No. 13] is **GRANTED in part** and **DENIED in part**.

2. The Motion to Dismiss is **DENIED** as to Counts I and II and **GRANTED** as to Count III. Count III is **DISMISSED without prejudice**.

3. The request for a more definite statement is **DENIED**.

4. The Plaintiff shall file an amended complaint by **March 24, 2025**.

**DONE AND ORDERED** in the Southern District of Florida on March 10, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record