UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-24745-RKA

**ACCESSNINJA, INC.,**

    Plaintiff,

v.

**PASSNINJA, INC.,** and
**RICHARD GRUNDY,**

    Defendants.
_____/

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO THE AMENDED COMPLAINT

Defendants, PassNinja, Inc. ("*PassNinja*") and Richard Grundy (the "*Defendants*"), assert the following Answer and Affirmative Defenses and Counterclaim to the Amended Complaint filed by the Plaintiff AccessNinja, Inc. ("*AccessNinja*").

## ANSWER

1. Admitted that AccessNinja frames this action as asserting claims for direct copyright infringement and indirect copyright infringement, otherwise denied.

2. Admitted.

3. Admitted that AccessNinja was formed to compete with PassNinja, otherwise denied.

4. Admitted that AccessNinja (and Bunsen working on behalf of AccessNinja) hijacked PassNinja servers and source code, sent misrepresentative DCMA notices to third parties, and demanded that PassNinja and Grundy pay a ransom, otherwise denied.

2

5. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation and therefore denied.

6. Admitted.

7. Admitted.

8. Admitted that the Complaint purports subject matter jurisdiction pursuant to §§ 1331 and 1338(a) otherwise denied.

9. Denied, as Plaintiff has not asserted any state law claims in its Amended Complaint. However, the Court has jurisdiction to award Defendants their reasonable attorneys' fees for prevailing on the Count the Plaintiff voluntarily dismissed.

10. Admitted.

11. Admitted.

12. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation and therefore denied.

13. Admitted that Bunsen should have known of Gundy for at approximately fifteen years, otherwise, denied.

14. Denied. In January 2020 PassNinja applied and was accepted to present at SuperConf, a conference organized by Bunsen. However, the conference was canceled in early March, 2020 due to the pandemic. Around or about July of 2020, Bunsen proposed to work on high level strategy and to manage software developers for PassNinja in exchange for payment. Defendants did not accept Bunsen's proposal.

15. Denied.

16. Defendants are without sufficient knowledge or information to form a belief as to the truth of as to Bunsen's alleged interest(s) and therefore denied. Also, otherwise denied.

17. Admitted that Bunsen approached Grundy with a written proposal to which the parties agreed. The contract speaks for itself. Otherwise denied.

18. Denied.

19. Admitted that the parties later discussed potential additional terms and entering into a new agreement, otherwise denied.

20. Denied.

21. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation and therefore denied.

22. Denied.

23. Admitted that the parties did not reach a new agreement, otherwise denied.

24. Admitted that Bunsen unilaterally took PassNinja's work and wrongfully claimed it as his joint work with his newly formed entity AccessNinja, otherwise denied.

25. Denied.

26. Admitted that AccessGrid purportedly registered a copyright in a joint work that it claims it authored with Bunsen, otherwise denied.

27. Denied.

28. Admitted that around September 8, 2024, Bunsen disrupted PassNinja's software as a service ("*SaaS*") and threatened to withhold access to PassNinja's SaaS in exchange for a ransom, otherwise denied.

29. Denied.

30. Denied.

31. Admitted that Bunsen on or about October 28, 2024, on behalf of AccessNinja, misrepresented to Amazon Web Services that AccessNinja owned a copyright and wrongfully demanded the improper takedown of PassNinja's entire website, otherwise denied.

32. Admitted that Bunsen on or about October 30, 2024, on behalf of AccessNinja, misrepresented to Google that AccessNinja owned a copyright and wrongfully demanded the improper takedown of PassNinja's entire website, otherwise denied.

33. Admitted that Bunsen on or about October 28, 2024, on behalf of AccessNinja, misrepresented to Salesforce, Inc. that AccessNinja owned a copyright and wrongfully demanded the improper takedown of PassNinja's entire website, otherwise denied.

34. Admitted that Bunsen made additional misrepresentations to additional online service providers. However, Defendants are without sufficient knowledge or information to form a belief as to the truth of as to Bunsen's remaining allegations and therefore denied.

35. Admitted that on or about October 29, 2024, PassNinja submitted a DMCA counternotice to salesforce, otherwise denied.

36. Denied.

37. Denied.

38. Admitted that AccessNinja filed this action, otherwise denied.

39. Defendants are without sufficient knowledge or information to form a belief as to the truth of as to Bunsen's allegations and therefore denied.

40. Defendant PassNinja repeats and realleges its responses to paragraphs 1-39 as if fully set forth herein. No response is required by Grundy and therefore denied.

41. Denied by PassNinja. No response is required by Grundy and therefore denied.

42. Denied by PassNinja. No response is required by Grundy and therefore denied.

43. Denied by PassNinja. No response is required by Grundy and therefore denied.

44. Denied by PassNinja. No response is required by Grundy and therefore denied.

45. Denied by PassNinja. No response is required by Grundy and therefore denied.

46. Denied by PassNinja. No response is required by Grundy and therefore denied.

47. Denied by PassNinja. No response is required by Grundy and therefore denied.

48. Defendant Grundy repeats and realleges its responses to paragraphs 1-39 as if fully set forth herein. No response is required by PassNinja and therefore denied.

49. Denied by Grundy. No response is required by PassNinja and therefore denied.

50. Denied by Grundy. No response is required by PassNinja and therefore denied.

51. Denied by Grundy. No response is required by PassNinja and therefore denied.

52. Denied by Grundy. No response is required by PassNinja and therefore denied.

53. Denied by Grundy. No response is required by PassNinja and therefore denied.

54. Denied by Grundy. No response is required by PassNinja and therefore denied.

55. Denied by Grundy. No response is required by PassNinja and therefore denied.

56. Denied by Grundy. No response is required by PassNinja and therefore denied.

Defendants deny that Plaintiff is entitled to any of the relief that it seeks in its WHEREFORE CLAUSES and respectfully request that judgment be entered against the Plaintiff in favor of the Defendants, that the Defendants be awarded their damages pursuant to their Third Party Complaint and Counterclaim [Ecf No. 48], reasonable attorneys' fees, costs, and such other relief as that is fair just and equitable.

## AFFIRMATIVE DEFENSES

1. **The Alleged Copyrighted Work is a Derivative Work of PassNinja's Work**

Copyright Protection extends only to new, original contributions. Neither AccessNinja nor Bunsen can claim rights in works that were derived from PassNinja's work without PassNinja's authorization.

2. **Unclean Hands**

Bunsen approached PassNinja seeking to contribute to an existing technology platform for PassNinja while explicitly acknowledging PassNinja's prior rights. Bunsen made representations regarding future documentation of the parties' relationship that he failed to honor. AccessNinja's expedited copyright registration misrepresents the nature and scope of AccessNinja and Bunsen's contributions. Plaintiff and Bunsen's conduct in using the AccessNinja mark that is confusingly similar to PassNinja and issuing improper DMCA takedown notices further demonstrates bad faith. Notably, PassNinja and Grundy were not aware that Bunsen and AccessNinja (which did not exist at the time PassNinja permitted Bunsen access to PassNinja's systems) would later claim any rights to PassNinja's SaaS beyond what was originally agreed between PassNinja and Bunsen, who amongst other things falsely represented and warranted, to PassNinja and Grundy, that he was an honorable gentleman, not a dishonorable boor.

3. **License**

All known improvements to PassNinja's software were created at request and direction of PassNinja with all parties' intention for PassNinja to use for work. There was delivery and acceptance, a pattern of collaboration and mutual understanding regarding use, and PassNinja's reliance on continued access. Moreover, the provision by PassNinja to Bunsen of PassNinja developer resources, PassNinja preexisting source code, PassNinja API, PassNinja servers,

PassNinja customer relationships, PassNinja bug databases, and other proprietary PassNinja privileges and information at a minimum created implied license for PassNinja to use the PassNinja software. However, due to the proprietary nature of PassNinja's contribution and the parties understanding, expression, and use of PassNinja Trademarks any such license is irrevocable and exclusive to PassNinja.

4. **Estoppel**

AccessNinja and Bunsen were aware of the Agreement between Bunsen, PassNinja and Grundy and Grundy and PassNinja's reasonable reliance in allowing Bunsen to work with and alter PassNinja's source code that PassNinja was relying upon for its business. Notably, PassNinja and Grundy were not aware that Bunsen and AccessNinja (which did not exist at the time PassNinja permitted Bunsen access to PassNinja's systems) would later claim any rights to PassNinja's SaaS beyond what was originally agreed between PassNinja and Bunsen, who amongst other things falsely represented and warranted, to PassNinja and Grundy, that he was an honorable gentleman, not a dishonorable boor. AccessNinja and Bunsen are estopped from inequitably abusing that relationship and trust.

5. **Latches**

PassNinja reasonably relied upon Bunsen's representations and warranties in providing Bunsen access to PassNinja's proprietary source code, systems, customers and developer relationships while allowing Bunsen to test new PassNinja source code in a PassNinja production environment. It would be inequitable and detrimental to PassNinja for AccessNinja and/or Bunsen to remove source code and/or software which Bunsen placed within PassNinja systems based upon the agreement that software/source code would belong to PassNinja where doing so would unfairly harm PassNinja and PassNinja customers. Notably, PassNinja and Grundy were not aware that

Bunsen and AccessNinja (which did not exist at the time PassNinja permitted Bunsen access to PassNinja's systems) would later claim any rights to PassNinja's SaaS beyond what was originally agreed between PassNinja and Bunsen, who amongst other things represented and falsely warranted, to PassNinja and Grundy, that he was an honorable gentleman, not a dishonorable boor.

6. **Payment**

PassNinja provided Bunsen with voting rights and offered the stock that the parties agreed to in exchange for his work on the PassNinja source code for PassNinja. PassNinja also provided Bunsen with access to its proprietary systems, databases, customers, and developer support relationships. Bunsen's abandonment of his stock and voting rights was done unilaterally.

7. **Waiver**

By allowing PassNinja and its customers to rely upon the changes to PassNinja source code operating in PassNinja's production environment Bunsen and his successors in interest (e.g. AccessNinja and HF0) waived any rights he had with regards to the source code and PassNinja and PassNinja's successors.

8. **Statute of Frauds**

Any alleged revokable licenses that Bunsen claims are outside the statute of frauds.

9. **Abandonment**

Bunsen and AccessNinja abandoned any rights they had in the source code by installing them in PassNinja's systems knowing that PassNinja and its customers would rely upon the software as a service.

10. **Invalid Copyright through Fraud on the US Copyright Office**

When Bunsen created AccessNinja Bunsen caused AccessNinja to file an application with the Copyright Office of the work Bunsen allegedly did while working on PassNinja

(the "*Fraudulent Copyright Application*"). When filing the Fraudulent Copyright Application, Bunsen and AccessNinja intentionally failed to disclose to the copyright office that the deposit for the Fraudulent Copyright Application was derived from PassNinja's code and contains multiple references to *PassNinja's pre-existing work* created by and exclusively for PassNinja. The Deposit for the Fraudulent Copyright Application also contains substantial source code and comments which Bunsen admits that he did not write and which AccessNinja did not disclaim in its Fraudulent Copyright Application. The PassNinja Components were included in previous iterations of PassNinja predating Bunsen's involvement with the company yet were not excluded from AccessNinja's Fraudulent Copyright Application that resulted in the fraudulent Copyright Registration TXu 2-453-833 (the "*Fraudulent Registration*"). In fact, Bunsen admitted in open court that Bunsen created a special program to remove the HTML and copyright notices from the PassNinja Source code (collectively the "*CMI*") before submitting the Altered PassNinja Source Code as the deposit copy for the Fraudulent Copyright Application with the United States Copyright Office. Additionally, AccessNinja filed the Fraudulent Copyright Application claiming that it was a work-made-for-hire of AccessNinja while Bunsen admits that the work that is claimed in the Fraudulent Copyright Application preexisted the formation of AccessNinja. Unlike normal copyright office policy, the Altered PassNinja Source Code has no copyright notice and consists of only the first and last ten pages of source code, rather than the twenty first and twenty last pages. AccessNinja also failed to disclose to the Copyright Office that any contributions contained within the Altered PassNinja Source Code were functional and not expressive in nature and, with the exception of removing and altering the CMI, were only done with PassNinja's express authorization. The *Fraudulent Copyright Registration* was obtained by fraud, based upon Bunsen

and AccessNinja's material misrepresentation to the United States Copyright Office, and that the registration is invalid and/or not owned by AccessNinja

11. **De Minimis Use**

Any use by PassNinja of any copyrighted works of AccessNinja, if any, is *de minimis* and does not involve substantial commercial use of creative expression.

12. **Not Copyrightable Subject Matter**

AccessNinja's allegations of infringement relate to functional aspects and processes of PassNinja's software as a service which are functional and not copyrighted subject matter. The creative content including the tutorials presented to the end/commercial users belongs to PassNinja and are not claimed as infringing by AccessNinja. Notably, copyright protection extends only to original elements of authorship in creative expression. Functional elements and industry standards are not protectable. Mere implementation of known techniques does not create ownership rights. In the matter at bar, what AccessNinja accuses of PassNinja infringing occurs where the idea and expression merge. Notably, there are limited ways to implement functionality, and AcecssNinja cannot monopolize standard technical approaches. Moreover, AccessNinja and Bunsen cannot claim copyright infringement in elements that are so common or essential to PassNinja's SaaS that they are not protected by copyright.

13. **Fair Use**

To the extent PassNinja or Grundy are using any copyrighted work that belongs to AccessNinja (which they deny), their use is transformative and fair.

14. **Innocence**

PassNinja and Grundy trusted Bunsen and believed he was a gentleman and not a boor. Any alleged infringement by PassNinja and Grundy is innocent and done in reasonably reliance

that PassNinja owns the PassNinja software. Notably, PassNinja and Grundy were not aware that Bunsen and AccessNinja (which did not exist at the time PassNinja permitted Bunsen access to PassNinja's systems) would later claim any rights to PassNinja's SaaS beyond what was originally agreed between PassNinja and Bunsen, who amongst other things falsely represented and warranted, to PassNinja and Grundy, that he was an honorable gentleman, not a dishonorable boor.

## COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 10(c), Defendants' Counterclaim asserted in the Third-Party Complaint and Counterclaim filed on February 24, 2025 [ECF No. 48] is adopted and incorporated herein by reference.

## DEMAND FOR JURY TRIAL

Defendants demand a jury trial on all issues so triable.

April 7, 2025                                  **ASSOULINE & BERLOWE, P.A.**

By:   s/ Peter A. Koziol
      Peter A. Koziol (FBN 030446)
      pak@assoulineberlowe.com
      Miami Tower
      100 SE 2nd Street, Suite 3650
      Miami, FL 33131
      Telephone: (305) 567-5576
      Facsimile: (305) 567-9343

      *Attorneys for Defendants, Counter-Plaintiffs, and*
      *Third Party Plaintiffs,*
      *Richard Grundy,*
      *and PassNinja, Inc.*