# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 24-cv-24745-ALTMAN/LETT

**ACCESSNINJA, INC.,** *d/b/a*
**ACCESSGRID**,

      Plaintiff,

v.

**PASSNINJA, INC.,** and
**RICHARD GRUNDY**,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

      **THIS CAUSE** is before the Court pursuant to a referral from District Judge Roy K. Altman of Plaintiff AccessNinja's Motion for Preliminary Injunction against Defendant PassNinja ("Pl.'s Mot. Prelim. Inj.") [ECF No. 6] under 17 U.S.C. § 502 and Federal Rule of Civil Procedure 65. ECF No. 14. Defendant responded in opposition to the Preliminary Injunction [ECF No. 12] and Plaintiff subsequently replied [ECF No. 25]. An evidentiary hearing on the Motion for Preliminary Injunction was held on January 29 and 30, 2025. ECF Nos. 36 & 38. Hearing Exhibits were submitted by both parties and incorporated into the record. ECF Nos. 40 & 42.

      For the reasons mentioned below, the Court **recommends** that the District Court grant the Plaintiff's Motion for Preliminary Injunction.

## I.     Background

This matter arises out of a copyright claim brought by the Plaintiff, in which Plaintiff asserts that Defendant is infringing by using a code base developed by the Plaintiff. Both AccessNinja and PassNinja operate as companies in near field communication ("NFC") technology, a low-power wireless interface similar to Bluetooth or Wi-Fi designed to communicate in a secure manner over short distances. Grundy Decl. ¶ 5, ECF No. 12-1; 1/29/25 Evid. Hr'g Tr. 88:2-90:1. Their dispute stems from a business relationship between the owners of these companies, Auston Bunsen and Richard Grundy, respectively. *See generally* Bunsen Decl., Dec. 10, 2024, ECF No. 6-1. The two individuals have known each other for approximately fifteen years and worked together more closely on PassNinja around February of 2023. *Id.* ¶¶ 11-12. When it was decided that Auston Bunsen would begin formally working at PassNinja, Bunsen and Grundy negotiated compensation for Bunsen at 51% of the shares of stock in the company. *Id.* That agreement was briefly memorialized in an email. *Id.* ¶ 12; Bunsen Decl., Jan. 10, 2025, ECF No. 25-1; H'rg Exs., Ex. 4, ECF No. 42-4.

During the relevant time, Bunsen worked extensively on developing the large amount of code in the Ruby programming language, all related to NFC pass management, which is the work at issue in this case ("Copyrighted Work"). Bunsen Dec. 10, 2024 Decl. ¶ 6; Bunsen Jan. 10, 2025 Decl. ¶ 17. The original codebase used by Grundy was written in the Javascript and HTML coding languages. Bunsen Jan. 10, 2025 Decl. ¶ 17; 1/29/25 Evid. Hr'g Tr. 143:2-6. Bunsen maintained his own

employment and company while working on the Copyrighted Work, although he admittedly worked on the Copyrighted Work for the benefit of PassNinja. 1/29/25 Evid. Hr'g. Tr. 31:1-31:24. No one outside of Bunsen substantially contributed to the coding work done on the Copyrighted Work, Bunsen Dec. 10, 2024 Decl. ¶ 8, although there was consultation with Grundy as the work was performed.

In the summer of 2024, the relationship between Bunsen and Grundy devolved. *Id*. ¶¶ 17-20. When the parties split, no equity in the company had been transferred to Bunsen, *Id*. ¶ 18, and none has been given to date. 1/29/25 Evid. Hr'g Tr. 146:24-147:6. Bunsen was also not compensated during his time at PassNinja. Bunsen Jan. 10, 2025 Decl. ¶¶ 8-10.

Bunsen subsequently formed AccessGrid (also known as AccessNinja) in August of 2024 and then applied to copyright the codebase that he had worked on for the previous year. Bunsen Dec. 10, 2024 Decl. ¶¶ 4, 9; Copyright Registration, ECF No. 6-2. In October of 2024, Bunsen and AccessGrid were granted the copyright for the code base as joint authors. *See* Copyright Registration. AccessNinja alleges that PassNinja continues to use the Copyrighted Work. Bunsen Dec. 10, 2024 Decl. ¶¶ 26-30.

In its Motion for Preliminary Injunction, Plaintiff alleges that it owns a valid copyright and, pursuant to Federal Rule of Civil Procedure 65 and the Copyright Act (17 U.S.C. § 502), moves to enjoin continued use of the Copyrighted Work by Defendants. In support of its motion, Plaintiff argues that it is likely to succeed on the merits of the case in part because it owns all of the Copyrighted Work authored

by Bunsen; the continued use of the Copyrighted Work by PassNinja will cause irreparable harm; the threat of injury to AccessNinja outweighs the potential harm suffered by Defendants should the preliminary injunction be granted; and the issuance of a preliminary injunction serves the public interest. *See generally* Pl.'s Mot. Prelim. Inj.

In their Response, Defendants dispute those assertions. *See* Def.'s Resp., ECF No. 12. Specifically as to the merits of the case and the right of ownership over the Copyrighted Work, they claim that Bunsen's work for PassNinja was completed within the scope of his employment. *Id*. at 9-12. In the alternative, they assert that Bunsen's work would constitute a specially commissioned contribution to a collective work-made-for-hire. *Id*. at 12-14. Further, they argue that the copyright itself is invalid, as Bunsen did not properly disclose to the Copyright Office that the work was derived from PassNinja. *Id*. at 14-16. In the alternative, they also argue that, at the very least, PassNinja has a license or equitable right to continue use of the code. *Id*. at 16-17. Defendants allege that the Plaintiff fails to satisfy any of the other prongs in favor of a preliminary injunction, and, because of this, the Motion for Preliminary Injunction should be denied. *Id*. at 19-23.

## II.    Legal Standard

Federal Rule of Civil Procedure 65, and 17 U.S.C. § 502 in this context, allow for a district court to institute a preliminary injunction. In moving for a preliminary injunction, the plaintiff bears the burden of persuasion on each of the four factors. *See Siegel v. LePore*, 234 F.3d 1663, 1176 (11th Cir. 2000). The decision to grant or

deny a preliminary injunction is a decision within the sound discretion of the district court. *See Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 332 (5th Cir. 1981). Granting a preliminary injunction should be seen as an exception, not the rule. *See Hayes v. DeSantis*, 561 F. Supp. 3d 1187, 1196 (S.D. Fla. 2021) (citing *Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 4 F.4th 1220, 1224 (11th Cir. 2021)).

Succeeding on a motion for a preliminary injunction requires that the moving party demonstrate: a substantial likelihood to succeed on the merits, irreparable harm will be suffered if the relief is not granted, the threatened injury outweighs the harm that the relief would inflict on the responding party, and entry of the relief would serve the public interest. A plaintiff must meet all four prerequisites for the issuance of a preliminary injunction. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

## III.   Analysis

### A. Likelihood to Succeed on the Merits

Plaintiff must first prove a substantial likelihood to succeed on the merits of the case. *Id*. To establish a prima facie case of copyright infringement, AccessGrid must prove ownership of a valid copyright and copying of constituent elements of the work that are original. *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996). Once the plaintiff meets the burden of proving a valid copyright, the burden then shifts to the defendants to prove why the claim of copyright is invalid. *See id.* (citing *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106 (9th Cir. 1990)). "At this juncture, it is incumbent upon a putative infringer to establish that the work in which copyright is claimed is unprotectable (for lack of originality) or, more

specifically, to prove that the portion of the copyrighted work actually taken is unworthy of copyright protection." *Bateman*, 79 F.3d at 1541. Courts evaluate affirmative defenses when properly raised and briefed by the defendant at the preliminary injunction phase to rule on the merits of the case. *See Swain v. Junior*, 958 F.3d 1081, 1092 (11th Cir. 2020).

AccessNinja has established that it has ownership of a valid copyright and that copying of constituent elements of the work by PassNinja has occurred. AccessNinja applied for a copyright of the Copyrighted Work in August of 2024 and received that copyright in October of 2024. Copyright Registration, ECF No. 6-2. While Defendants challenge the validity of the copyright, those challenges fail as discussed below. As to the use of the Copyrighted Work, Plaintiff relies on messages between Bunsen and Grundy where Grundy asks if he could retain access to the codebase. Bunsen Dec. 10, 2024 Decl., Ex. D, ECF No. 6-1.  Moreover, Defendants conceded in the Hearing that when Bunsen removed the Copyrighted Work from the PassNinja website and servers, it "broke some of the plumbing of the application" and Grundy had to work extensively to rebuild the PassNinja. *See* 1/29/25 Evid. Hr'g. Tr. 119:3-25. The facts presented indicate that PassNinja was using the codebase that Bunsen worked on and generated for the copyright. *See id*. Taken collectively, the testimony and evidence presented satisfies the two elements of a copyright infringement claim.

PassNinja contests the copyright and likelihood to succeed on the merits of the case through several affirmative defenses. First, Defendants argue that modifications to the code were undertaken during the scope of Bunsen's employment, making the

resulting code constitute a "work made for hire." Second, if the resulting code was not undertaken as a "work made for hire," then it was done as a specially commissioned contribution to a collective "work made for hire." Third, Defendants argue the copyright registration itself is invalid because Bunsen failed to disclose that the Copyrighted Work was derived from PassNinja, among other omissions. And lastly, Defendants argue, at the very least, PassNinja has a license or equitable right to use the Copyrighted Work. The Court takes each of these affirmative defenses in turn.

### 1. Work Made For Hire

PassNinja asserts that it has control of the Copyrighted Work as the code was produced as a work-made-for-hire during Bunsen's time working for PassNinja, disputing AccessNinja's claim of a valid copyright. The Copyright Act protects the ownership of a copyright, stating that "[c]opyright in a work protected under this title vests initially in the author or authors of the work." 17 U.S.C. § 201(a). Under 17 U.S.C. § 201(b), the Copyright Act carved out an exception to this rule, stating

> in the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

A "work made for hire" is defined in the Copyright Act as

> 1) a work prepared by an employee within the scope of his or her employment; or
> 2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instruction text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101. In *Community for Creative Non-Violence v. Reid*, the Supreme Court enunciated that "Congress intended to provide two mutually exclusive ways for works to acquire work for hire status: one for employees and the other for independent contractors." 490 U.S. 730, 747-48, 109 S. Ct. 2166, 2176, 104 L. Ed. 2d 811 (1989). However, when the party creating the work that results in a copyright is an equal owner, courts have held that the copyrighted material does not count as "work made for hire" because it fails to fall within either of these categories, and so the creating partner has the right to the copyright. *See Woods v. Resnick*, 725 F. Supp. 2d 809, 823-35 (W.D. Wisc. 2010). Therefore, to determine whether AccessNinja and Bunsen hold a valid copyright, the Court must determine whether the Copyrighted Work is a "work made for hire" because Bunsen was an employee or independent contractor of PassNinja when he created the Copyrighted Work, or whether Bunsen was a partner of PassNinja and Grundy.

As the Copyright Act itself does not specifically define "employee" or "scope of employment," to determine whether an individual was an employee and whether he or she created a work within the scope of his or her employment, courts look to the general common law of agency. *See Reid*, 490 U.S. at 739-40. In interpreting the intent of Congress in the Copyright Act, the *Reid* Court found that "[n]othing in the text of the work for hire provisions indicates that Congress used the words 'employee' and 'employment' to describe anything other than 'the conventional relation of employer and employe[e].'" *Id.* at 740. "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's

right to control the manner and means by which the product is accomplished." *Id.* at 751. To evaluate control over the manner and means of the work, courts consider a number of factors:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Ashkenazi v. S. Broward Hosp. Dist.*, 607 F. App'x 958, 961 (11th Cir. 2015) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992)).

Using these factors to evaluate Bunsen's relationship with PassNinja, it becomes clear that he cannot be considered an employee. Some of the factors for employment lean in favor of PassNinja: the work required of Bunsen did take skill (1/29/25 Evid. Hr'g Tr. 29:4-30:6), the duration of the relationship between the parties did last some time (Bunsen Jan. 3, 2025 Decl. ¶ 12, noting the start of Bunsen working at PassNinja in February of 2023), and the work was directly within the scope of the regular business of the hiring party (*see id.* ¶¶ 15-16, noting Bunsen's work on PassNinja's codebase).

More of the factors, however, lean against a finding of an employment relationship. Bunsen never received compensation or payment from PassNinja during his time working on the project. *Id.* at 151:20-153:13. While Bunsen worked for PassNinja, he operated under his own supervision and did not receive tasks or

assignments from Grundy or PassNinja. ECF No. 25-1, Bunsen Decl. ¶ 20, Jan. 3, 2025.   There existed no agreement for the specific duration of Bunsen's work for PassNinja, or any agreed number of hours or time frame for completion of the project. *See* ECF No. 42, Ex. 4; 1/29/25 Evid. Hr'g Tr. 148:12-20. Bunsen maintained his own separate employment during some of his time working on the Copyrighted Work, and never received any vesting ownership or shares in the company. 1/29/25 Evid. Hr'g Tr. 38:18-25; 45:1-12. No evidence was presented that Bunsen was hired or compensated as an employee, or had any contract or agreement beyond the preliminary texts between Grundy and Bunsen suggesting that Bunsen would become a 51% partner of PassNinja. *See* Bunsen Jan. 3, 2025 Decl. ¶ 12; Hr'g Exs., Ex. 4 (the email exchange between the Grundy and Bunsen over preliminary terms for Bunsen's work at PassNinja); 1/29/25 Evid. Hr'g Tr. 148:12-20 (noting that no subsequent documentation after the initial email occurred).

Moreover, in prior work between the two on a different coding project, Bunsen signed a consulting agreement with an agreed hourly rate and specific language about ownership of a copyright belonging to Grundy's company. *See* Consulting Agrement, Hr'g Exs. Ex. 2, ECF No. 42-2 (consulting contract between Bunsen and Grundy for programming work done for the company Flomio). This stands in stark contrast to the facts of the present case where no legal documents were ever executed to establish any employee relationship – only ownership – and no agreement exists to transfer ownership of the work to PassNinja. *See* 1/29/25 Evid. Hr'g Tr. 142:20-25.

Rather, all of the evidence suggests that it was the parties' intention that Bunsen would be a part owner of PassNinja. Defendants relied on that handshake agreement, claiming that only Bunsen's refusal to accept the equity promised prevented the contract from completing. *See* 1/30/25 Evid. Hr'g Tr. 4:11-18. The email correspondence confirms the parties did not reach an iron-clad agreement and promised to revisit specifics before finalizing any ownership or employment. ECF No. 42, Ex. 4 ("If you agree to this, simply reply: 'I agree' and we'll use it as a gentleman's agreement until we execute actual legal docs later this year."). This too, however, leans in favor of PassNinja having no valid claim to the Copyrighted Work as a "work made for hire." When asked what employment status Bunsen had, Defendants relied on Bunsen having access to company servers and representing himself as an actor on behalf of PassNinja. Grundy Decl. ¶ 16; 1/29/25 Evid. Hr'g Tr. 49:11-50:2. During testimony, no evidence was ever produced that Bunsen acted as an employee and not an owner.

Almost all the evidence related to Bunsen's time working on the product, speaking with outside investors, and setting up opportunities with clients suggest that Bunsen was a part owner of the company. *See* 1/30/25 Evid. Hr'g Tr. 5:1-10 ("Q. Is that why you allowed him to open the Stripe Account? A. Most definitely, yeah among other things. I mean, [Bunsen] was really instrumental in taking action as an owner."). In instances where an owner is the one working on the copyrighted material, the law has recognized that the owner – not the business – has the right to copyright that work. *See Woods*, 725 F. Supp. 2d at 824-25; *see also, e.g., Remark Home Designs,*

*LLC v. Oak Street Condo Projects, LLC*, Case No. 16-14305, 2019 WL 384952, at *8 (E.D. Mich. 2019) (citing *Woods*, *Heimerdinger v. Collins*, Case No. 2:07CV00844 DN, 2009 WL 1743764, at *4 (D. Utah 2009), *Brown v. Flowers*, 297 F. Supp. 2d 846, 852 (D.N.C. 2003), and *M&A Assocs., Inc. v. VCX, Inc.*, 657 F. Supp. 454, 459-60 (E.D. Mich. 1987), *aff'd*, 856 F.2d 195 (6th Cir. 1988) (all holding in comparable cases that without supervision from higher parties, ownership partners own the right to their copyright material)). The complexity presented in the case at bar, unlike in the cited cases which involve equal partners, is that Bunsen and Grundy never finalized their informal agreement to have Bunsen acquire a 51% ownership interest in PassNinja. Nevertheless, the relationship that Bunsen had with PassNinja appeared more as an owner than an employee or independent contractor.

Viewed in its totality, these facts indicate that Bunsen was neither employed by nor an independent contractor for PassNinja, and his work cannot be considered "work made for hire."

### a. Specially Commissioned Work Made for Hire

Defendants next argue that Bunsen's work was commissioned by PassNinja to contribute to the collective work in the PassNinja software system, and that the Copyrighted Work constitutes a specially commissioned work made for hire. This argument hinges on two main principles: the idea Bunsen was hired by PassNinja to compose the Copyrighted Work, and the Copyrighted Work composes a part of the collective PassNinja codebase and should be considered part of a compilation or collective work.

The totality of the "work made for hire" definition as it pertains to the "specially ordered or commissioned" portion provides some clarity regarding this argument:

> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, **if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.** For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.

17 U.S.C. § 101 (emphasis added). The cases cited by the Defendants relevant to this argument concern codebases as part of collective works. *See, e.g.*, *Stanacard, LLC v. Rubard, LLC*, 2016 WL 462508, at *7-8 (S.D.N.Y., Feb. 3, 2016). These cases differ from the instance case where Bunsen originally agreed to do the work under a temporary agreement with the proposal of taking a majority ownership stake in the company. Additionally, the cases cited often reference specific contractual language, including specific terms and work for hire language. *See, e.g., Expotech Eng'g, Inc. v. Cardone Indus.*, No. 1901673, 2021 WL 3771809, at *10, n.5 (E.D. Pa. Aug. 25, 2021) (noting that the Consulting Services Agreement contained a safety-net clause requiring the plaintiff to assign material to the defendant). The *Woods* case is more comparable to the present case where there is a lack of any formal agreement that

13

the work would be considered a "work made for hire" and with a 50% ownership stake in the LLC. *Woods* makes clear that the right to the source code belongs to the creator. *See Woods*, 725 F. Supp. 2d at 823-24.

Accordingly, the Copyrighted Work is not a "work made for hire" or a "specially commissioned work made for hire," and these affirmative defenses fail.

### 2.  Invalid Copyright

The Defendants also argue that the copyright is invalid because the Copyrighted Work is a derivative work, and because Bunsen omitted material information or made material misrepresentations in the copyright application, including that Bunsen misrepresented that the work was a "work made for hire" of AccessGrid in placing the company as a co-author.

### a. Derivative Work

The Court first turns to the argument that the Copyrighted Work is a derivative work and therefore the copyright issued to it is invalid. Defendants' argument misapprehends the derivative work affirmative defense.

"Under 17 U.S.C. § 101, a derivative work must incorporate a substantial element of a preexisting work of authorship and recast, transform, or adapt those elements." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (citation omitted). A derivative work qualifies for a separate copyright when it itself is non-infringing and sufficiently original. *See Montgomery v. Naga*, 168 F.3d 1282, 1290 (11th Cir. 1999). A work is only considered a "derivative work" if it would be considered an infringing work if it were unauthorized. *See Architects Collective v. Pucciano & English, Inc.*, 247 F. Supp. 3d 1322, 1340 (N.D. Ga. 2017) (citing *Nimmer*

14

*on Copyright* § 301 (2015)). Originality is usually a question of fact but can be determined as a matter of law if the uncontested facts show that the creator of a derivative work "'merely copied' a former work, 'adding nothing original' and having the 'earlier work in mind.'" *See Franzetta v. Vanguard Productions, LLC*, 716 F. Supp. 3d 1265, 1277 (M.D. Fla. 2024) (internal citations omitted).

The derivative work affirmative defense is typically raised by a defendant to rebut the notion that his use of the work is infringing on the copyright because he has sufficiently altered the copyrighted work such that his work can be considered a new, independent work that is itself copyrightable. The Defendants allege Bunsen derived his work from the original PassNinja codebase that was writing in Javascript and HTML. Bunsen Jan. 3, 2025 Decl. ¶ 6; Bunsen Jan. 10, 2025 Decl. ¶ 17. These allegations tend to show that, even if the Copyrighted Work is itself a derivative work, it was sufficiently altered such that it can maintain a valid copyright of its own.

Without deciding whether the Copyrighted Work is derivative or not, there is ample evidence to support a trier of fact's conclusion that the work is not derivative. Bunsen wrote the Copyrighted Work in a different programming language from the original code and spent over 1,800 hours working on it. *Id.* At the hearing, Grundy testified that the PassNinja copyrights were only found in the PassNinja Javascript and HTML codebase. 1/29/25 Evid. Hr'g Tr. 102:20-21. No substantial evidence or testimony was presented in the hearing that Bunsen relied on the prior codebase of PassNinja in creating the copyrighted work. *See* Bunsen Jan. 10, 2025 Decl. ¶ 18 ("I did not use any prior source code from PassNinja to write the Copyrighted Work.").

Because derivative works are entitled to their own copyrights, regardless if the Copyrighted Work is derivative or not, the affirmative defense fails to challenge the validity of the copyright issued in the present case. Therefore, this argument does not succeed in demonstrating that Plaintiff would not be successful on the merits of its claim.

### b. Alleged Omissions in the Copyright Registration and Application

A copyright registration can be rendered invalid if the application contained omissions or misrepresentations, and it is determined that those problems in the application were intentional or purposeful concealment of relevant information. *See St. Luke's Cataract & Laser Institute, P.A. v. Sanderson*, 573 F.3d 1186, 1201 (11th Cir. 2009) (citing *Original Appalachian Artworks, Inc. v. Toy Loft Inc.*, 684 F.2d 821, 828 (11th Cir. 1982)). A certificate is considered valid unless it included improper information with knowledge of that error and the Patent Office would have refused registration if the application had included that information. *See Unicolors, Inc. v. H&M Hennes and Mauritz, L.P.*, 595 U.S. 178, 181-82 (2022) (referencing the language contained in the safe-harbor provision of the Copyright Act, 17 U.S.C. § 411).

The copyright registration satisfies the inquiry into its validity for purposes of the preliminary injunction. Defendants' argument regarding the claims of "work made for hire" and the copyrighted code from the original Javascript and HTML codebase have been addressed and the same reasoning applies here to find that those

arguments do not constitute omissions from the copyright application to affect the validity of the copyright registration.

As to the argument that the copyright itself is invalid based on the listing of AccessGrid as a co-author with Bunsen, the weight of the evidence does not support a finding that this argument works defeat the validity of the Copyrighted Work such that Plaintiff would not succeed on the merits. The analysis into whether the Patent Office would not have issued the patent registration based on the alleged defect in the application is intensely fact-based, requiring an analysis into several different issues such as was the error in the application was substantial or *de minimis* or if the error was intentional or accidental. The Court heard little to no testimony on the specific information required to make this determination, and so it declines to do so at this stage of the case.

### 3.  Defendants Had a License or Equitable Right for Use

The Defendants further argue that they are entitled to use the Copyrighted Work. An implied license for use of copyrighted work is created when the owner of the copyright "1) creates a work at another person's request; 2) delivers the work to that person; and 3) intends that the person copy and distribute the work." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010) (citing to *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997)). "Although the Copyright Act requires all exclusive transfers of copyright to be in writing, 17 U.S.C. § 204(a), 'non-exclusive licenses are exempt from this writing requirement, 17 U.S.C. §101, and may be granted orally, or may even be implied from conduct.'" *McElroy v. Courtney Ajinca*

17

*Events LLC*, 512 F. Supp. 3d 1328, 1336 (N.D. Ga. 2021) (quoting *Latimer*, 601 F. 3d at 1235)). If it is found that an implied license was granted by the owner of a copyright, that owner waives the ability to bring a claim for infringement while that license is in effect. *See Wilchombe v. TeeVee Toons*, 555 F.3d 949, 956 (11th Cir. 2009). Because determining if an implied license existed is a question of law, the Court must make that determination based on the intent of the parties and the scope of the possible license based on the objective evidence. *See Beckman v. Regina Caeli, Inc.*, 752 F. Supp. 3d 1346, 1376 (N.D. Ga. 2024) (citations omitted).

Based on the evidence presented, the Court cannot conclude that an implied license was given. Although Bunsen originally created the work for PassNinja as a contemplated co-owner, he was not compensated for his work on the copyrighted material. Also, he never delivered the work to PassNinja following the parties' separation and he affirmatively stated that the work could not continue to be used by PassNinja.

After evaluating the likelihood of success prong and the affirmative defenses that impacted that analysis, the Court now turns to the other three prerequisites that Plaintiff must demonstrate for the Court to grant its Motion for Preliminary Injunction.

### B. Irreparable Harm

"The Eleventh Circuit has acknowledged that once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim, there is a presumption of irreparable harm." *ATP Sci. Proprietary, Ltd. v. Bacarella*, No. 20-

18

CV-60827, 2020 WL 3868701, at *6 (S.D. Fla. July 9, 2020). A delay in seeking a preliminary injunction, while not dispositive, "militates against a finding of irreparable harm." *Wreal, LLC*, 840 F.3d at 1248. Defendants rely on the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), requiring courts to apply traditional equitable principles in deciding to implement an injunction, and not facially determining irreparable harm on the basis of likelihood of success, to state that the Plaintiff has not proven irreparable harm necessary for a preliminary injunction. In the Southern District of Florida, the presumption of irreparable injury in intellectual property cases continues to exist but requires the court to exercise its discretion in deciding if the particular circumstances of a case bear substantial parallels to previous cases in doing so. *See adidas AG v. adidascrazylight2.com*, No. 13-21230-CIV, 2013 WL 1651731, at *7 (Apr. 16, 2013) (holding that in light of *eBay*, "a court may grant preliminary injunctive relief without the benefit of a presumption of irreparable injury, or may decide the particular circumstances of the instant case bear substantial parallels to previous cases such that a presumption of irreparable injury is an appropriate exercise of its discretion in light of the historical traditions" (internal quotations and citations omitted)).

In the present case, while AccessNinja had minor delays in filing their case and requesting an injunction, this is just one of the many factors that can be weighed to satisfy this prong. The Plaintiff argues that their irreparable harm begins with the substantial time and effort that Bunsen took to develop the codebase and the direct competition with the same proprietary information should the Defendants be allowed

to continue to use the copyrighted material. More importantly, AccessNinja indicates that the revenue generated from investors and potential clients in this realm of start-up companies is essential, and having another company use its proprietary copyright would cause irreparable harm. The precarious financial situation of a fledgling company operating in technological spaces is key to Plaintiffs' harm, particularly because of the fast-moving nature of the industry.

Given the presumption of irreparable harm that exists in copyright cases where likelihood of success for the Plaintiff has been established, along with the lost business opportunities faced by occupying the same market and using the Copyrighted Work of another entity, AccessNinja will be irreparably harmed should the preliminary injunction not be granted. *See* Bunsen May 6, 2025 Decl., ECF No. 69-1 (advising of a loss of investment due to direct competition). In balancing the considerations here, the Court finds that the continued use of the Copyrighted Work for the duration of this litigation constitutes irreparable harm to the Plaintiff.

### C. Comparable Harm

The third prong that the Plaintiff must satisfy for the issuance of preliminary injunction requires the Court to weigh the injury to the plaintiff against any potential harm claimed by the Defendants. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). When the harms incurred by the defendant if the injunction is granted are similar to the possible harms to the plaintiff if the injunction is denied in an infringement case, courts have found that this balance weighs in favor of the party with the valid copyright. *See Advantus, Corp. v. T2 International, LLC*, No.

3:13-cv-240-J-99MMH-TEM, 2013 WL 121223313, at *12 (M.D. Fla. May 30, 2013).

If a party has an alternative to the copyrighted material and can function without

infringing, the weight of harm is substantially reduced while also encouraging the

granting of an injunction to deter future infringement. *See Peach State Labs, Inc. v.

Environmental Manufacturing Solutions, LLC*, No. 6:09-cv-395-Orl-28DAB, 2011 WL

13140668, at *5 (M.D. Fla. Aug. 12, 2011).

PassNinja states that AccessNinja does not currently have client base and that

the harm PassNinja would experience for ceasing to use the Copyrighted Work would

be irreparable to it, as it would effectively have to shut down its code base. *See* 1/29/25

Evid. Hr'g Tr. 119:15-25 (testimony from Grundy indicating that when Bunsen

removed the Copyrighted Work, customers for PassNinja were unable to use the

service until Grundy was able to build out a version of the code in its original form).

However, Grundy also testified that PassNinja is not continuing to use the

Copyrighted Work, which would mean that implementing the injunction would not

cause any amount of harm to PassNinja as it is operating under its new code. *See id.*

at 130:21-131:12.[1] While the Court can entertain arguments in the alternative in the

---

[1]     Q. Okay. Has PassNinja done any updates since this?
     A. Absolutely. Quite a bit, actually. So getting the server back up after Mr. Bunsen,
     you know, deleted it on September 8th was, you know, a very challenging task. It
     involved several people. And in doing so, you know, we built up, you know, several
     aspects of the code base – had to do it from our own side of things. Let's say that.
     Q. And in doing that, did you take into account any customer complaints or anything?
     A. Yes. The blowback of the server being offline, you know – there was, you know, like
     I was mentioning earlier, a plumbing that was broken in the way that Auston deleted
     it from the PassNinja's [sic] servers and put it on his own Heroku account. It broke
     some of this plumbing, and so we had to rebuild that on a separate domain and – you
     know, that's currently what's being used now, which is completely different that how
     it was before. So, yeah, there's been a good amount of change. And it was something
     that was iterated based on customer feedback and features that were requested during
     that time, and so it's evolved.

law, these arguments are factually inconsistent with each other. Either PassNinja is continuing to use the Copyrighted Work or PassNinja is able to use a totally different codebase and would not suffer any comparable harm if it is restricted from using the Copyrighted Work.

Notwithstanding which factual scenario is accurate, this prong militates in favor of an injunction because when comparing harms, businesses cannot argue that they will be harmed in the form of a crippled business solely through the enforcement of a valid copyright. *See CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F. Supp. 2d 1333, 1345 (S.D. Fla. 1998)). As such, AccessNinja has satisfied this element in favor of granting a preliminary injunction.

### D. Public Interest

The fourth and final factor to weigh is the public interest in issuing the injunction. "The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works." *C.B. Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1084 (S.D. Fla. 2007) (citing to *Kevin Harrington Enterprises, Inc. v. Bear Wolf, Inc.*, No. 98-CV-1039, 1998 WL 35154990 (S.D. Fla. 1998)); *Stoneworks Inc. v. Empire Marble and Granite Inc.*, 49 U.S.P.Q.2d 1760, 1765-66 (S.D. Fla. 1998)).

The Defendants cite to no caselaw in this section of their brief, and "when a party fails to address a specific claim, or fails to respond to an argument made by the opposing party, the Court deems such claim or argument abandoned." *See Ramsey v. Bd. Of Regents of Univ. Sys. of Georgia*, No. 1:11-cv-3862-JOF-JSA, 2013 WL

1222492, at *29 (N.D. Ga. Jan 30, 2013), *aff'd*, 543 F. App'x. 666 (11th Cir. 2013) (citations omitted). Additionally, the Court has been unable to find any compelling caselaw that would support a finding that the public interest would not be served in protecting the Copyrighted Work. The caselaw specifically leans in favor of the Plaintiff stating that public interest is only served by protecting a valid copyright. The Court finds that the Plaintiff has satisfied this prong for a preliminary injunction.

## IV.    Conclusion

Collectively, the Plaintiff successfully satisfied the four factors required for a preliminary injunction. Plaintiff demonstrated a likelihood of succeeding on the merits of the case by presenting a valid copyright and through the admissions of the Defendants and the evidence, proof was presented of continuing use of the Copyrighted Work. The irreparable harm is shown through the continued loss of revenue streams and the inference of harm that comes from copyright cases. The balancing of the harms to the two parties also favors the Plaintiff. Finally, the public interest is inherently served through the enforcement of valid copyrights and applies in this case. Given these factors, the Court **RECOMMENDS** that the District Court **grant** Plaintiff's Motion for Preliminary Injunction.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge

on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.

**DONE and ORDERED** in Chambers in Miami, Florida on this 2nd day of October, 2025.

**ENJOLIQUÉ A. LETT**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record