UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-24745-ALTMAN/Lett

ACCESSNINJA, INC. d/b/a
ACCESSGRID,

    *Plaintiff*,

v.

PASSNINJA, INC. and RICHARD
GRUNDY,

    *Defendants.*

_____/

## ORDER REVERSING MAGISTRATE JUDGE REPORT & RECCOMENDATION

On December 10, 2024, our Plaintiff, AccessNinja, filed a Motion for Preliminary Injunction ("PI Motion") [ECF No. 6], seeking to preclude PassNinja, Inc. and Richard Grundy (the "Defendants") from infringing on AccessNinja's "copyrighted software code identified by U.S. Copyright Office Registration Number TXu 2-453-833." PI Motion at 1. We referred the PI Motion to U.S. Magistrate Judge Enjoliqué A. Lett, *see* Order of Referral [ECF No. 14], who recommended that we grant the motion, *see* Report & Recommendation ("R&R") [ECF No. 106]. Magistrate Judge Lett cautioned the parties as follows:

> Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.

*Id.* at 23–24. The Defendants timely filed their objections to the R&R, *see* Defendants' Objections to the R&R ("Def. Objs.") [ECF No. 113], and AccessNinja responded, *see* Plaintiff's Response to Defendants' Objections ("Pla. Resp.") [ECF No. 115]. We held a status conference to discuss the

Defendants' Objections on February 6, 2026. *See* Paperless Minute Entry for Status Conference Dated February 6, 2026 [ECF No. 134].

After careful review, we now **SUSTAIN** the Defendants' Objections and **REVERSE** the Magistrate Judge's R&R. AccessNinja's PI Motion is **DENIED**.

## THE LAW

### I.    Review of a Magistrate Judge's R&R

District courts must review *de novo* any part of a magistrate judge's disposition that has been properly objected to. *See* FED. R. CIV. P. 72(b)(3). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). "If no objection or only [a] partial objection is made to the magistrate judge's report, the district judge reviews those unobjected portions for clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (cleaned up)).

When a party timely objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Leonard v. Polk Cnty. Sheriff's Dep't*, 2019 WL 11641375, at *1 (M.D. Fla. Apr. 16, 2019) (Jung, J.). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). The "[f]ailure to object to the magistrate [judge]'s factual

findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citation omitted).

## II. Granting a Preliminary Injunction

"A district court may grant a preliminary injunction only if the moving party establishes that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest." *Gonzalez v. Gov. of Ga.*, 978 F.3d 1266, 1270–71 (11th Cir. 2020) (footnote omitted). A district court cannot grant a preliminary injunction unless the moving party satisfies all four of these requirements. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("Because [the moving party] must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms [his request]."). The Plaintiff bears the burden of establishing its need for a preliminary injunction. *See ibid.* ("Because a preliminary injunction is an extraordinary and drastic remedy, its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." (cleaned up)).

## ANALYSIS

A party seeking a preliminary injunction must establish that "it has a substantial likelihood of success on the merits." *Gonzalez*, 978 F.3d at 1270. To succeed on a copyright-infringement claim, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (cleaned up). "A copyright registration certificate proves prima facie proof of the existence of a valid copyright." *C.B. Fleet Co. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1081 (S.D. Fla. 2007) (Ryskamp, J.) (cleaned up)); *see also* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of

3

the validity of the copyright and of the facts stated in the certificate."). "Once the plaintiff produces a certificate of copyright, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996).

The second element of an infringement claim—copying—"comprises two subparts, *factual* and *legal* copying, both of which [ ] the plaintiff has the burden to prove." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020) ("*Compulife I*") (cleaned up and emphases added). Factual copying "may be shown either by direct evidence of the copying or, in the absence of such evidence, [ ] 'inferred from proof of access to the copyrighted work and probative similarity.'" *Bateman*, 79 F.3d at 1541 (quoting *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994)).

"'Legal'—or 'actionable'—copying occurs when 'those elements of the copyrighted work that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable.'" *Compulife I*, 959 F.3d 1288 at 1302 (quoting *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1300 (11th Cir. 2008). The Eleventh Circuit has adopted a three-part test for legal copying—the abstraction-filtration-comparison test: "First, a court should abstract—break down the allegedly infringed program into its constituent structural parts. Second, a court should filter—sift out all non-protectable material. Finally, the court should compare the protected material with the copycat. When considering the literal elements of a program, like source code and object code, the plaintiff need establish only a substantial similarity between the two works." *Compulife Software, Inc. v. Newman*, 111 F.4th 1147, 1156–57 (11th Cir. 2024), *cert. denied sub nom. Rutstein v. Compulife Software, Inc.*, 145 S. Ct. 1172, 221 L. Ed. 2d 253 (2025) ("*Compulife II*") (cleaned up).

"Substantial similarity must be assessed with respect to both the quantitative and the qualitative significance of the amount copied to the copyrighted work as a whole. Quantitatively insubstantial copying may still be actionable if it is qualitatively substantial. For instance, because a small portion of the structure or code of a computer program may nonetheless give it distinctive

4

features or may make the program especially creative or desirable, copying of that portion is actionable." *Compulife I*, 959 F.3d 1288 at 1302–1303 (cleaned up).

Magistrate Judge Lett found that AccessNinja was likely to succeed on the merits of its copyright-infringement claim because "AccessNinja has established that it has ownership of a valid copyright and that copying of constituent elements of the work by PassNinja has occurred." R&R at 6. Specifically, Magistrate Judge Lett found that copying had occurred based on two pieces of evidence: (1) "messages between Bunsen and Grundy where Grundy asks if he could retain access to the codebase"; and (2) the Defendants' testimony that "when Bunsen removed the Copyrighted Work from the PassNinja website and servers, it 'broke some of the plumbing of the application' and Grundy had to work extensively to rebuild the PassNinja.'" R&R at 6. We disagree with this finding and now reverse.

As we discussed at our February 6, 2026 status conference, neither AccessNinja's PI Motion nor Magistrate Judge Lett's R&R engage with the abstract-filtration-comparison test outlined in *Compulife I* and *Compulife II*. *See generally* PI Motion; R&R; *see also* Def. Objs. at 3 ("The PassNinja Parties object to the finding of the Magistrate that Plaintiff has established 'copying of constituent elements of the work that are original' as the Magistrate does not assess the substantial similarity of the AccessNinja's Alleged Work against Defendants' code." (citing R&R at 6)). We can't ignore this deficiency. The abstract-filtration-comparison test is *the* test—the one that would allow us to determine which portions of a plaintiff's source code are protectable and whether a defendant's allegedly infringing code bears a substantial similarity to the copyrighted works. *See Compulife I*, 959 F.3d 1288 at 1303. ("Before comparing two works to determine if they display the required substantial similarity, a court must 'eliminate from comparison the unprotectable elements of' the copyrighted work. This process—known as 'filtration'—is necessary because even substantial similarity between a copyrighted work's unprotectable elements and a purportedly infringing work isn't actionable,

5

regardless of how many unprotectable elements are copied or how important they may be." (cleaned up)). Without this critical information, we cannot grant the "extraordinary and drastic remedy" of a preliminary injunction. *Wreal*, 840 F.3d at 1248.[1]

Still resisting, AccessNinja advances several arguments—all unavailing. *First*, AccessNinja insists that the "Defendants admitted infringement during the hearing before Magistrate Judge Lett on January 29, 2025." Pla. Resp. at 5. The record doesn't support that contention. Grundy simply testified that, when Bunsen removed several sections of code from the Defendants' servers, he "broke some of the plumbing of the [PassNinja] application." PI Motion Hearing Transcript ("PI Hrg. Tr.") [ECF No. 79] at 119:15–25. But the mere fact that Bunsen's removal of code from a server reduced PassNinja's functionality doesn't prove that the Defendants were infringing on the Copyrighted Works. As the Defendants observe, "[n]o evidence was presented to the Magistrate that the code Bunsen admittedly removed from PassNinja's servers was part of the AccessNinja's Alleged Work. Merely removing a portion of code does not equate to that code being within the scope of [ ] AccessNinja's Alleged Work. There was no evidence that the PassNinja Parties copied any of Bunsen's undisclosed code. Rather, PassNinja hired new engineers to fix the plumbing." Def. Objs. at 7; *see also id.* at 18 ("Grundy's actual testimony simply states that that PassNinja had to get its server back up after Bunsen deleted content on September 8, 2024. There is no evidence in the record that what Bunsen deleted from PassNinja's server or what PassNinja created to repair its server due to Bunsen's deletions read upon the unknown code of AccessNinja's Alleged Work." (cleaned up)). In short,

---

[1] Granting a preliminary injunction without comparing the two codebases would be particularly problematic here because, as the Defendants note, "[i]f the Court enters a preliminary injunction against the PassNinja Parties, they would not know what code they would [be] enjoined from using[,] and the Court would not have any baseline (i.e., Plaintiff's code) to assess if the injunction was violated." Pla. Resp. at 6. This is exactly right. Even if we believed AccessNinja's argument that the Defendants "admitted" to copyright infringement (we don't), we couldn't issue a workable injunction because we have *no idea* which portions of the Defendants' codebase infringe AccessNinja's source code.

Grundy's testimony that Bunsen's code removal broke the "plumbing" of the Defendants' application isn't an admission that the Defendants infringed AccessNinja's code.

*Second*, AccessNinja claims that "decisions from other courts in this Circuit demonstrate that a line-by-line codebase comparison is not required to find a likelihood of success on the merits." Pla. Resp. at 6 (citing *Tinubu Square Americas Inc. v. Iguarantee, LLC*, 2020 WL 6270848, at *2 (M.D. Fla. Aug. 13, 2020) (Davis, J.)). According to AccessNinja, "the district court [in *Tinubu*] found sufficient evidence of infringement to support a preliminary injunction without conducting a line-by-line comparison of the respective codebases." *Ibid.* But *Tinubu* was an order granting an *ex parte* temporary restraining order—not a preliminary injunction. And, indeed, when Tinubu sought a preliminary injunction *in that same case*, the court found that "Tinubu failed to establish that it is substantially likely to succeed on the merits of its claim that Defendants misappropriated [the plaintiff's program's] source code" because "Tinubu fails to reference expert testimony or any testimony whatsoever that compares the coding in [the defendant's program] with [the plaintiff's program]." *Tinubu Square Americas Inc. v. Iguarantee, LLC*, 2020 WL 7421382, at *5–6 (M.D. Fla. Nov. 25, 2020) (Davis, J.). *Tinubu* thus strongly supports our conclusion here—that AccessNinja cannot establish a substantial likelihood of success on its copyright-infringement claim without a comparison of the two codebases.

*Third*, AccessNinja argues that "PassNinja waived the argument that Magistrate Judge Lett was required to compare its codebase to AccessGrid's Copyrighted Work because Defendants did not even offer to present PassNinja's codebase for comparison during the two-day evidentiary hearing Magistrate Judge Lett conducted in January." Pla. Resp. at 7. While we agree that the Defendants should've raised this issue *much* more clearly before the Magistrate Judge, we can't say that they forfeited their argument on this point. During the PI Motion hearing, after all, counsel for the Defendants explained that "[i]t's [ ] disputed whether or not the defendants are using the code. There has been no presentation to the Defendants or this Court other than the first—the allegedly first and

7

ten last pages of the source code that we are accused of copying." PI Hrg. Tr. at 12-22–13-1. The Defendants also expressed concern over the fact that the "Defendants repeatedly requested copies of the allegedly Copyrighted Work from the Plaintiff and even provided a proposed protective order, but they still have not received a copy." PI Motion Response [ECF No. 12] at 21 n.2. Moreover, the Defendants had no burden to "offer to present" their code at the PI hearing. Pla. Resp. at 7. Again, it was *AccessNinja's burden* to establish a substantial likelihood of success on its claim by presenting a comparison of the codebases to the Magistrate Judge. Since it didn't do that, it failed to meet its burden—whether the Defendants advanced a *Compulife* argument or not.

* * *

For all these reasons, we **ORDER and ADJUDGE** as follows:

1. The Magistrate Judge's Report & Recommendation [ECF No. 106] is **REVERSED**.

2. The Defendants' Objections to the Report & Recommendation [ECF No. 113] are **SUSTAINED**.

3. The Plaintiff's Motion for a Preliminary Injunction [ECF No. 6] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on February 20, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record