**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

ACCESSNINJA, INC. d/b/a ACCESSGRID,

*Plaintiff*,

v.

PASSNINJA, INC. and RICHARD GRUNDY,

*Defendants*.

Case No. 1:24-cv-24745-RKA

**RENEWED MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff AccessGrid, Inc. ("AccessGrid"),[1] by and through its undersigned counsel, hereby renews its motion for preliminary injunction to stop Defendants PassNinja Inc. ("PassNinja") and Richard Grundy ("Grundy") from their ongoing willful infringement of AccessGrid's copyrighted software code identified by U.S. Copyright Office Registration Number TXu 2-453-833 (the ("Copyrighted Work").

**INTRODUCTION**

This Court overruled Magistrate Judge Lett's October 2, 2025 Report and Recommendation (ECF No. 106) and denied AccessGrid's initial motion for a preliminary injunction on one ground: the absence of the full abstraction-filtration-comparison analysis articulated in *Compulife Software, Inc. v. Newman*, 959 F.3d 1288 (11th Cir. 2020) (*Compulife I*), and *Compulife Software, Inc. v. Newman*, 111 F.4th 1147 (11th Cir. 2024) (*Compulife II*).[2] The

[1] At the time of filing, Plaintiff's legal name was AccessNinja, Inc. d/b/a AccessGrid. Plaintiff has always conducted business under the name AccessGrid, and officially changed its legal name to AccessGrid, Inc. in September 2025. *See* D.E. 114.
[2] *Id*.

Court did not find that AccessNinja lacks a valid copyright. It did not find that no copying occurred. Rather, the Court determined that the Eleventh Circuit's opinions in *Compulife* required a side-by-side codebase comparison filtered to remove non-protectable elements in order to establish legal copying to satisfy the element of substantial likelihood of success on the merits and secure a preliminary injunction.

AccessGrid heard the Court loud and clear. AccessGrid now renews its motion for a preliminary injunction and supplies the parties' respective codebases[3] along with the report of AccessGrid's expert witness Jason Frankovitz of Quandary Peak. Mr. Frankovitz's expert report supplies the abstraction and comparison components of the *Compulife* analysis, which shows the more than 8000 lines of Ruby of Rails source code files present in both code bases were effectively identical. Under *Compulife*, defendants PassNinja and Grundy ("Defendants") bear the burden of the filtration component of the analysis to identify and filter out non-copyrightable portions of the Copyrighted Work. But because PassNinja's codebase is 98% "identical" to AccessGrid's Copyrighted Work, Defendants cannot argue, let alone establish, that the Copyrighted Work does not contain any copyrightable creative expression. Doing so would constitute an admission that Defendants' two claimed copyrighted works TXu002458594 and TXu002458390 are not copyrightable, foreclosing Defendants' own copyright counterclaims.

AccessGrid submits this renewed motion for the simple reason that Defendants' willful infringement continues unabated. AccessGrid asked Defendants to agree to proceed swiftly to a bench trial on both parties' copyright claims, consistent with the Court's directive to the parties to try and expedite resolution of this action. Defendants refused, presumably because the longer they

[3] The parties have their respective code base ex-parte pursuant to the Court's March 18, 2026 Order (ECF No. 143) directing the parties to follow the procedures set forth in ECF No. 142-1, which in turn directs the parties to submit their respective code to the Special Master and the Court for in camera review.

drag this case out, the longer they can unlawfully exploit AccessGrid's Copyrighted Work. So instead of a swift summer bench trial, the parties will be filing summary judgment motions, which necessarily require additional time to allow the Court to decide them. Because the current posture all but ensures months of continued infringement by Defendants, and because AccessGrid's expert report supplies the lone evidence that this Court determined was necessary to enjoin that infringement, AccessGrid respectfully submits this renewed motion to enforce its rights and arrest Defendants' ongoing willful infringement.

AccessGrid satisfies every element of the standard for issuance of a preliminary injunction. *First*, AccessGrid is substantially likely to succeed on the merits of its copyright infringement claims because the registration certificate establishes AccessGrid's ownership of the Copyrighted Work. Defendants' interrogatory responses; text messages between Grundy and AccessGrid's founder, Auston Bunsen ("Bunsen"); and the unrebutted expert report of Jason Frankovitz establish both legal and factual copying. That evidence shows that Bunsen is the author of the Copyrighted Work and owned all copyrights in it when he assigned them to AccessGrid; that PassNinja had access to AccessGrid's Copyrighted Work; that PassNinja copied the Copyrighted Work wholesale; and that Defendants continue to unlawfully use AccessGrid's Copyrighted Work.

*Second*, because AccessGrid is highly likely to succeed on the merits of its copyright infringement claims, precedent from this Circuit dictates that the threat of irreparable harm to AccessGrid is presumed. The ongoing threat of irreparable harm is separately and independently evident from the fact that PassNinja is using AccessGrid's Copyrighted Work to compete directly against AccessGrid for customers in the near field communication ("NFC") technology space.

*Third*, the harm AccessGrid has and will continue to suffer if this Court does not arrest Defendants 'unlawful infringement far outweighs any "harm" Defendants might claim they would

suffer. Florida courts have squarely rejected the notion that a copyright infringer suffers any harm when a court orders it to cease its unlawful conduct.

*Fourth*, public policy favors enforcing AccessGrid's valid copyright registration and scotching Defendants' unauthorized and unlawful conversion of AccessGrid's valuable intellectual property.

Courts have long favored preliminary injunctions in copyright infringement cases "to protect . . . copyright interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded." *YZ Prods., Inc. v. Individuals & Unincorporated Associations Identified on Schedule* A, No. 23-62268-CIV, 2024 WL 670581, at *2 (S.D. Fla. Jan. 3, 2024). All of those rationales apply with force here. AccessGrid respectfully submits that this Court should therefore issue a preliminary injunction enjoining defendants PassNinja and Grundy from any further use or exploitation of the Copyrighted Work.

**STATEMENT OF FACTS**

Plaintiff AccessGrid is a Delaware corporation engaged in the business of developing and exploiting an application programming interface ("API") that allows for the issuance and management of NFC passes. NFC passes are essentially digital "key fobs" that can be distributed and used as digital "keys" to open physical doors.

AccessGrid's Founder and Chief Executive Officer ("CEO"), Bunsen, is a successful web developer and entrepreneur who has had his work featured in the New York Times, Forbes, Business Insider, The Miami Herald, TechCrunch and more. In or around early 2023, Bunsen

began writing the Copyrighted Work, which took approximately 1,800 hours to complete.[4] No other person substantially contributed to or assisted in authoring the Copyrighted Work.[5] As the author, Bunsen was the owner of all copyright in the Copyrighted Work until he assigned those rights to AccessGrid on August 27, 2024.[6] AccessGrid successfully registered the Copyrighted Work with the U.S. Copyright Office on October 30, 2024.[7]

In or about February 2023, Bunsen approached Grundy, who he had known for years, about potentially using the Copyrighted Work that Bunsen was about to start writing and developing at that time.[8] Specifically, Bunsen proposed that he and Grundy work together to build PassNinja, with Bunsen contributing the Copyrighted Work that he had started writing in exchange for fifty-one percent (51%) of the stock in PassNinja.[9] For months, Bunsen and Grundy negotiated over the terms of the contemplated arrangement.[10] During that time, in a good faith effort to collaborate on the contemplated new venture, Bunsen granted Grundy limited access to the Copyrighted Work for the purpose of writing tutorials for potential customers to learn about NFC technology and its commercial applications.[11] Assuming that he and Grundy would eventually iron out their contemplated business partnership, Bunsen eventually allowed PassNinja to utilize the Copyrighted Work to overhaul and operate PassNinja's website.[12] Bunsen did not, however, transfer any interest in the Copyrighted Work to Grundy or PassNinja.[13] Nor did Bunsen grant

---

[4] *See* ECF N. 6-1 (Declaration of Auston Bunsen ("Bunsen Dec.")), at ¶ 6; ECF No. 79 (12.19.25 Hrg. Tr.) at 30:8-34:16.
[5] Bunsen Dec. at ¶ 8; ECF No. 6-2 (Copyright Registration).
[6] Bunsen Dec. at ¶ 9.
[7] *See* ECF No. 6-2 (Copyright Registration).
[8] Bunsen Dec. at ¶¶ 11-12; ECF No. 79 (12.19.25 Hrg. Tr.) at 25:8-26:1.
[9] Bunsen Dec. at ¶ 12.
[10] *Id*. at ¶ 14.
[11] *Id.* at ¶ 15.
[12] Bunsen Dec. at ¶ 16; ECF No. 79 (12.19.25 Hrg. Tr.) at 36:3-7.
[13] Bunsen Dec. at ¶ 31; ECF No. 79 (12.19.25 Hrg. Tr.) at 36:8-12.

either of them an irrevocable license to use the Copyrighted Work for any purpose.[14] Importantly, neither PassNinja nor Grundy ever paid Bunsen any compensation or asked him to sign any agreements (employment agreements, independent contractor agreements, work for hire agreements, non-disclosure agreements, stock agreements, corporate documents, independent contractor agreements, licensing agreements, etc.) for writing the code that now makes up the Copyrighted Work, or for allowing PassNinja to use said code while they were simultaneously trying to work out the terms of their contemplated partnership.[15]

The negotiations between Bunsen and Grundy over the terms for Bunsen to join Grundy in building PassNinja eventually stalled out and ultimately fell apart in the summer of 2024.[16] Bunsen and Grundy never reached or executed a final agreement regarding equity in PassNinja or its right to use the Copyrighted Work.[17] Accordingly, Grundy never transferred any equity in PassNinja to Bunsen, and neither Bunsen nor AccessGrid ever transferred any interest in the Copyrighted Work to Grundy or PassNinja.[18] Nor did Bunsen or AccessGrid grant Grundy or PassNinja any license to use or exploit the Copyrighted Work beyond the limited use Bunsen permitted before the negotiations collapsed.[19]

On September 8, 2024, Bunsen notified Grundy that AccessGrid, as the lawful owner of all right, title, and interest in the Copyrighted Work, revoked the limited authorization Bunsen had previously granted to Grundy to access the Copyrighted Work.[20] Bunsen offered Grundy and

---

[14] Bunsen Dec. at ¶ 16.
[15] ECF No. 79 (12.19.25 Hrg. Tr.) at 138:14-139:10, 147:2-6, 152:7-14, 153:6-13, 157:13-16; Grundy 10.21.25 Dep. Tr. at 34:4-35:1; 87:2-20, excerpts attached as Exhibit A.
[16] Bunsen Dec. at ¶ 17; ECF No. 79 (12.19.25 Hrg. Tr.) at 36:8-37:6.
[17] Bunsen Dec. at ¶ 17; ECF No. 79 (12.19.25 Hrg. Tr.) at 36:8-12; 138:14-18, 146:24-147-1; Grundy 10.21.25 Dep. Tr. at 87:2-20.
[18] Bunsen Dec. at ¶¶ 18, 31; Grundy 10.21.25 Dep. Tr., at 34:4-35:1; 87:2-20.
[19] Bunsen Dec. at ¶ 30.
[20] *Id.* at ¶¶ 19, 20; ECF No. 79 (12.19.25 Hrg. Tr.) at 42:20-25.

PassNinja the opportunity to license the Copyrighted Work from AccessGrid for a monthly fee.[21] However, negotiations over a licensing fee for PassNinja to use the Copyrighted Work also broke down, and no licensing agreement was ever executed.[22] Instead, Grundy and PassNinja unlawfully copied the Copyrighted Work and exploited it for their own commercial purposes.

AccessGrid filed suit against PassNinja for Copyright Infringement on December 4, 2024, and moved for a preliminary injunction shortly thereafter on December 10, 2024.[23] AccessGrid's Motion for Preliminary Injunction was heard by Magistrate Judge Lett, who held a 2-day evidentiary hearing on the matter.[24] At the hearing, AccessGrid had a text copy of its Copyrighted Work, and offered to provide it on an attorneys' eyes' only basis before the hearing concluded.[25] Defendants objected to this suggestion, on the basis it was too late to do a code analysis despite the fact that the Court had not made any rulings, and would not do so for another eight (8) months.[26] The reason Defendants objected to a comparison of the code is clear. After Defendants played "hide the ball" with their code, AccessGrid's expert was able to run industry standard software to conduct the abstraction and comparison components of the *Compulife* analysis. He ultimately determined the more than 8,000 lines of code of Ruby on Rails files in PassNinja's code are essentially identical to those in the Copyrighted Work.

**ARGUMENT**

Federal courts have long recognized the right of copyright holders to enjoin infringement of their copyrighted works. *See e.g., Buck v. Kloeppel*, 10 F. Supp. 345, 345 (S.D. Fla. 1935)

---

[21] Bunsen Dec. at ¶ 21; *see also* ECF No. 79 (12.19.25 Hrg. Tr.) at 43:8-12.
[22] Bunsen Dec. at ¶ 26; ECF No. 79 (12.19.25 Hrg. Tr.) at 43:8-12, 44:10-14.
[23] ECF Nos. 1, 6.
[24] *See* ECF Nos. 79-80.
[25] ECF No. 80 at 55:6-56:16.
[26] *Id.* at 55:6-56:22.

("[t]he ownership of the copyright— and hence the right to enjoin the future infringement thereof— remains in the copyright proprietor").

The Federal Rules of Civil Procedure and the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. (the "Copyright Act") both authorize temporary injunctive relief to enjoin ongoing infringement of copyright works. 17 U.S.C. § 502; Fed R. Civ. P. 65. To succeed on a motion for preliminary injunction, the moving party generally must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Roadget Bus. Pte. Ltd. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A,"* No. 24-CV-21516, 2024 WL 4009453, at *2 (S.D. Fla. June 28, 2024) (citation omitted) (granting *ex parte* motion for temporary restraining order in a copyright infringement action).[27] However, "in cases involving copyright or trademark infringement, a plaintiff is not held to the usual requirement of showing irreparable injury if a prima facie case of infringement is made out." *Suzuki Motor Corp. v. Jiujiang Hison Motor Boat Mfg. Co.*, No. 1:12-CV-20626, 2012 WL 640700, at *4 (granting motion for preliminary injunction in a trademark infringement action) (S.D. Fla. Feb. 27, 2012). As set forth below, AccessGrid satisfies each of the requisite elements.

## I. AccessGrid Will Succeed on the Merits Because It Owns the Registered Copyright And PassNinja's Unauthorized Exploitation Is Undisputed

AccessGrid must establish two elements to present a prima facie case of copyright

---

[27] Because "[p]reliminary injunctions are, by their nature, products of an expedited process often based upon an underdeveloped and incomplete evidentiary record," courts may rely on evidence such as "affidavits and hearsay materials" in determining whether a movant has made a requisite showing for a temporary injunction. *Tinubu Square Americas Inc. v. Iguarantee, LLC*, No. 3:20-CV-880-J-39PDB, 2020 WL 6270848, at *2 (M.D. Fla. Aug. 13, 2020) (citing *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1171 (11th Cir. 2002)).

infringement: '"(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Roadget Bus. Pte. Ltd*., 2024 WL 4009453, at *2 (citation omitted). The evidence AccessGrid already has on both points easily meets the applicable standard. Both elements are beyond dispute here.

A. **AccessGrid Owns All Copyrights in the Copyrighted Work Authored by Bunsen**

AccessGrid's copyright registration certificate is sufficient on its own to demonstrate ownership of a valid copyright and satisfy AccessGrid's burden on the first element. *See e.g. C.B. Fleet Co. v. Unico Holdings, Inc*., 510 F. Supp. 2d 1078, 1081 (S.D. Fla. 2007) ("[T]he certificate constitutes prima facie evidence of copyright validity and ownership."); *Dream Custom Homes, Inc. v. Mod. Day Const., Inc*., 773 F. Supp. 2d 1288, 1301–02 (M.D. Fla. 2011), *aff'd*, 476 F. App'x 190 (11th Cir. 2012) ("[T]he certificate of registration may, *without more*, constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.") (emphasis added); *Ladera v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 23-23228-CIV, 2024 WL 4290783, at *3 (S.D. Fla. Sept. 17, 2024), *report and recommendation adopted*, No. 23-23228-CIV, 2024 WL 4287094 (S.D. Fla. Sept. 25, 2024) ("Liability for copyright infringement arises when a plaintiff can prove (1) ownership of a copyright, and (2) a defendant's copying of the copyrighted work. A plaintiff satisfies the first prong when it produces a certificate of registration that confirms the plaintiff's ownership of the copyright.") (citation omitted); *Cook v. Maximus Int'l Specialists*, No. 1:23-CV-20589-KMM, 2023 WL 2628769, at *3 (S.D. Fla. Mar. 13, 2023) ("[A]s to the first prong Plaintiff has adduced prima facie evidence of her ownership of the copyrighted Work via the Certificate of Registration for the Work attached to the Complaint"); 17 U.S.C. § 410(c) ("In any judicial proceedings the

certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate").

AccessGrid applied for and received a Certificate of Registration for the Copyrighted Work[28] in October 2024, less than two years after Bunsen began writing the Copyrighted Work.[29] As a matter of law, AccessGrid has therefore satisfied its burden to establish its ownership of a valid copyright. *C.B. Fleet Co.*, 510 F. Supp. 2d at 1081; *Ladera*, 2024 WL 4290783, at *3; *Cook* 2023 WL 2628769, at *3.[30]

### B. Evidence Establishes that PassNinja Copied AccessGrid's Code

The second part of the likelihood of success on the merits analysis requires AccessGrid to establish the unauthorized copying or use of the Copyrighted Work. *Roadget Bus. Pte. Ltd.*, 2024 WL 4009453, at *2. AccessGrid can establish infringement through direct evidence or through a combination of indirect evidence of Defendants' access to the Copyrighted Work and evidence of similarities between the Copyrighted Work and the infringing work. *Ecometry Corp.*, 2006 WL 8435440, at *5; *see also Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020) ("Factual copying . . . may be shown either by direct evidence, or, in the absence of direct evidence, it may be inferred from indirect evidence demonstrating that the defendant had access to the copyrighted work and that there are probative similarities between the allegedly infringing work and the copyrighted work.") (citation omitted).

Here AccessGrid has both ample indirect and direct evidence to establish: (i) Defendants'

---

[28] ECF No. 6-2.
[29] *See id.*; Bunsen Dec. at ¶ 26.
[30] "Once the plaintiff produces a certificate of copyright, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Affordable Aerial Photography, Inc. v. Nicklaus*, No. 13-80254-CIV, 2013 WL 11522047, at *2 (S.D. Fla. Oct. 9, 2013) (citing *Bateman v. Mnemonics, Inc.*, 79 F.3d 1531, 1541 (11th Cir. 1996)).

access to the Copyrighted Work; and (ii) the substantial similarity of the programming code utilized by PassNinja to the programming code that constitutes the Copyrighted Work (they are one and the same). This is sufficient prove both factual and legal copying.

*First*, text messages between Bunsen and Grundy provide ample evidence of Defendants' access to AccessGrid's Copyrighted Work. Specifically, on September 8, 2024, following the breakdown of business negotiations between Bunsen and Grundy, Grundy sent Bunsen a text message asking if he could "retain ***access***" to the codebase containing the Copyrighted Work, to which Bunsen replied no to the Ruby codebase at issue:[31]




[31] Bunsen Dec. at ¶¶ 22, 23 (emphasis added).

Later that same day, after Bunsen's revocation of the limited authorization he had previously granted, Grundy and Bunsen exchanged additional text messages that reveal Defendants 'knowledge that Bunsen is the author of the Copyrighted Work, and that Defendants cannot retain and use the Copyrighted Work without purchasing a license:[32]




These text messages establish Defendants 'access to the Copyrighted Work. They also confirm

---

[32] *Id*. at ¶¶ 24-25.

that Bunsen revoked his prior authorization to access or use the Copyrighted Work. Defendants knew they had no alternative but to reach agreement or purchase a license. They did neither. Instead, they simply continued exploiting a copy of the Copyrighted Work for unlawful commercial gain.[33] PassNinja's response to AccessGrid's interrogatory further supports that the Defendants still have access to the Copyrighted Work, admitting that "[t]the code Bunsen prepared for the PassNinja website was integrated into the passninja-web repository soon after he left PassNinja on or around September, 2024. The code Bunsen wrote for the PassNinja Java client library remains in that repository."[34]

*Second*, AccessGrid has direct evidence that the code utilized by PassNinja is not only substantially similar to the Copyrighted Work, but identical to the Copyrighted Work.[35] Expert Jason Frankovitz did a comparison of the Copyrighted Work to the Ruby on Rails code produced by PassNinja in this matter as PASSNINJA-00002851-68.[36] Mr. Frankovitz broke the code down into constituent parts including the filesystem structures; the GitHub commit logs; and he further broke the code down by each of its folder for comparison.[37] Mr. Frankovitz not only found that each element was substantially similar, but after conducting a line by line comparison of the code found in each folder, concluded "[e]ffectively, the analysis showed that 142 Ruby on Rails source code files present in both codebases were identical."[38] Notably, PassnNinja's code only has 142 source code files, meaning the entirety of PassNinja's code was identical to the Copyrighted

---

[33] *Id*. at ¶¶ 26, 27.
[34] PassNinja's Supplemental Response to Plaintiff's First Set of Interrogatories at Interrogatory No. 3, attached as Exhibit B.
[35] *See* Expert Report of Jason Frankovitz, attached as Exhibit C.
[36] *Id.* at ¶ 10.
[37] *Id. at* ¶¶ 11-15*,* 23-24
[38] *Id.* at ¶ 25.

Work.[39]

In fact, ***PassNinja has admitted*** that its current API and/or publicly available website is ***still utilizing*** the Ruby on Rails code Bunsen authored, *i.e*. the Copyrighted Work.[40] Thus, there is no dispute that PassNinja is using code identical to the code found in the Copyrighted Work.[41]

"[A]fter an infringement plaintiff has demonstrated that he holds a valid copyright and that the defendant engaged in factual copying, the *defendant* bears the burden of proving—as part of the filtration analysis—that the elements he copied from a copyrighted work are unprotectable." *Compulife*, 959 F.3d at 1305. (emphasis added) (finding "the magistrate judge improperly placed the burden on Compulife to prove, as part of the filtration analysis, that the elements the defendants copied were protectable; we hold that he should have required the defendants to prove that those elements were not protectable"). Here, Defendants would have to prove that Copyrighted Work did not contain a single original, protectable element. This is not true,[42] and if it were, it would foreclose Defendants 'own copyright-based counterclaims.[43]

## II. AccessGrid Does Not Need to Establish Irreparable Injury but Will Continue to Suffer It Absent an Injunction

Eleventh Circuit precedent is clear that AccessGrid does not need to establish a threat of

[39] *Id.* at ¶ 24.
[40] PassNinja's Supplemental Response to Plaintiff's First Set of Interrogatories at Interrogatory No. 1. (stating PassNinja's current API and/or publicly available website is still using the code Bunsen wrote between 2023-2024, specifically the "Rails dashboard (controllers, billing, admin, third-party integrations) and applied Java SDK bug fixes").
[41] *See id.*
[42] *See id*. at ¶ 25 ("Although some of these files were expected template files that normally appear in Ruby on Rails projects (like database.yml and application.rb) the majority were not template files. These non-template files were original files, with unique names not found in other Ruby on Rails projects, and their contents were identical to each other."); AccessGrid's Amended Response to Defendants' First Set of Interrogatories, at Interrogatory No. 14 (listing original elements of the copyrighted work), attached as Exhibit C; ACCESSGRID001226 - ACCESSGRID001239, attached as Exhibit D; ECF No. 79 (12.19.25 Hrg. Tr.) at 32:17-33:25.
[43] Even if Defendants were only still using a portion of the Copyrighted Work, the burden is on them to prove that "the elements [they] copied from a copyrighted work are unprotectable." *Compulife Software Inc*, 959 F.3d at 1305.

irreparable injury to obtain a preliminary injunction because AccessGrid has established that it is likely to succeed on the merits of its copyright infringement claim. *See Burger King Corp. v. Lee*, 766 F. Supp. 1149, 1157 (S.D. Fla. 1991) ("[b]ecause we have found that [plaintiff] is likely to prevail on the merits of its [ ] infringement claim . . . it follows that [plaintiff] has established that the injury it faces is of an irreparable nature")*; CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F. Supp. 2d 1333, 1345 (S.D. Fla. 1998) (appropriate to presume irreparable harm once plaintiff establishes a prima facie case of copyright infringement); *Suzuki Motor Corp.*, 2012 WL 640700, at *4 (same).

But if AccessGrid were required to establish irreparable harm, the combination of the substantial amount of time Bunsen spent developing the Copyrighted Work and PassNinja's unlawful use of the Copyrighted Work to compete against AccessGrid more than suffice.

"In copyright cases, irreparable harm typically exists where the plaintiff has invested considerable time and money in the development of a product and the defendant has engaged in wholesale copying." *Caracol Television, S.A. v. Telemundo Television Studios, LLC.*, No. 18-CV-23443, 2018 WL 6727305, at *3 (S.D. Fla. Dec. 20, 2018) (citation omitted). As alleged in the Complaint, this is precisely what occurred. Bunsen spent approximately 1,800 hours over the course of more than a year writing the more than 8,000 lines of code in the Copyrighted Work.[44] Despite Bunsen's revocation of Defendants 'authorization to use any portion of the Copyrighted Work, PassNinja simply continued using the Copyrighted Work – *willfully and unlawfully* – to run PassNinja's website and power PassNinja's business. Worse yet, PassNinja did so in order to compete against AccessGrid for prospective customers seeking innovative NFC access solutions. In fact, PassNinja openly promotes the Copyrighted Work on its website, falsely advertising to

[44] Bunsen Dec. at ¶ 6.

prospective customers and the public that "Our software and APIs" can be used to quickly design and issue NFC passes:[45]

> **PassNinja helps build NFC experiences across mobile**
>
> Use our software and APIs to create, issue, update, and revoke passes for Apple Wallet and Google Wallet in minutes instead of months.

But, of course, the Copyrighted Work is the referenced software and APIs, and it is most certainly does not belong to PassNinja. Yet PassNinja's false advertisement targets the same prospective customers that AccessGrid seeks:[46]

> **AccessGrid**
>
> API for NFC keys
>
> We make it easy to issue and manage **NFC keys for Apple Wallet via API** for startups, access control integrators, and large enterprises.
>
> We sell an API that allows you to design your key template, and start issuing NFC keys this week. Want corporate badges for your office? No problem. Need the ability to remotely withdraw access? Done. You can rely on our expertise to keep you secure, in compliance and well integrated with Apple devices with your already deployed hardware.

---

[45] ECF No. 6-3 ("Use our software and APIs to create, issue, update, and revoke passes for Apple Wallet and Google Wallet in minutes instead of months.").

[46] ECF No. 6-4 (Screen shot of AccessGrid, https://www.accessgrid.com, (last visited December 5, 2024) ("We sell an API that allows you to design your key template, and start issuing NFC keys this week.")).

That fact alone is sufficient to sustain a finding of irreparable harm. *Roadget Bus. Pte. Ltd.*, 2024 WL 4009453, at *3 (irreparable harm where infringing copies were used to "divert customers in amounts difficult to quantify").

## III. The Threat of Injury to AccessGrid Absent an Injunction Outweighs Any Potential Harm Defendants Might Claim

The third element necessary to obtain a preliminary injunction requires AccessGrid to establish that the injury it faces absent the requested injunction outweighs any potential harm the requested injunction might cause to PassNinja or Grundy. *See Roadget Bus. Pte. Ltd.*, 2024 WL 4009453, at *2.

As with irreparable harm, AccessGrid's compelling showing of the substantial likelihood of success on its copyright infringement claim against Defendants satisfies AccessGrid's obligation to establish this third element for injunctive relief. The rationale is simple: ordering Defendants to comply with the Copyright Act and cease illegally using AccessGrid's Copyrighted Work will not cause any cognizable "harm" to Defendants. *Id.* at *3 ("A temporary restraining order would prevent Defendants from publicly using Plaintiff's copyrighted works without permission. That is not a harm"). This remains true even if the requested injunction effectively terminates PassNinja's business because "a company cannot build a business on infringements and then argue that enforcing the law will cripple that business." *PrimeTime 24 Joint Venture*, 9 F. Supp. 2d at 1345. Put simply, Defendants cannot complain about being required to comply with the law. Further, they have code (PassNinja 2020) that they contend worked before Bunsen's contributions, they should be able to, in theory, use that to continue operating their business.

## IV. The Requested Preliminary Injunction Will Serve The Public Interest

It is well-established that "public interest favors the entry of a temporary injunction" to protect copyrights and "protect the public from being defrauded and misled by the use of

[i]nfringing" materials. *Venus Fashion, Inc. v. Changchun Chengji Tech. Co*., No. 16-CV-61752, 2016 WL 8678883, at *2 (S.D. Fla. Sept. 12, 2016)*; see also CBS Broad., Inc. v. EchoStar Comm'ns Corp*., 265 F.3d 1193, 1198 (11th Cir. 2001) (preliminary injunction on copyright claim serves the "public interest because the public interest lies with protecting the rights of copyright owners"); *C.B. Fleet Co., Inc.*, 510 F. Supp. 2d at 1084 ("[t]he public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works"); *YZ Prods., Inc. v. Individuals & Unincorporated Associations Identified on Schedule* A, No. 23-62268-CIV, 2024 WL 670581, at *2 (S.D. Fla. Jan. 3, 2024) ("The public interest favors issuance of a preliminary injunction to protect [p]laintiff's . . . copyright interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods"). That is precisely what AccessGrid asks this Court to do through this motion. The requested preliminary injunction will serve the public interest by protecting AccessGrid's valuable Copyrighted Work and foreclosing PassNinja's unlawful commercial exploitation of it.

**CONCLUSION**

Defendants have willfully hijacked AccessGrid's Copyrighted Work to unlawfully and unfairly compete against AccessGrid in the nascent NFC technology space. Despite all but conceding that they did not author or acquire the Copyrighted Work, Defendants have inexplicably failed to purchase a license from AccessGrid or simply cease their unauthorized use of the Copyrighted Work. Between the valid Certificate of Registration issued to AccessGrid by the Copyright Office and the unequivocal demonstration of factual and legal copying that the parties text messages, interrogatory responses, and the expert report provide, AccessGrid has established

its right to a preliminary injunction to arrest Defendants 'unlawful infringement. AccessGrid respectfully requests that this Honorable Court grant this motion and issue a preliminary injunction against Defendants accordingly.

Dated: March 27, 2026

Respectfully submitted,

/s/ *Daniel C. Mazanec*
Daniel C. Mazanec, Esq.
Florida Bar No. 887387
dan@pag.law
Alexandra Goodstone, Esq.
Florida Bar No. 0125003
alexandra@pag.law
PAG LAW, PLLC
Four Seasons Tower
1441 Brickell Avenue, Suite 1120
Miami, FL 33131
Tel. 786.292.1599

*Counsel for Plaintiff AccessGrid, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 27, 2026, in accordance with Federal Rule of Civil Procedure 5(b)(2)(c) and 5(d)(B)(i) that I arranged to have a true and correct copy of Plaintiff's Motion for a Preliminary Injunction served by mail upon Defendants Richard Grundy and PassNinja, Inc. at their last known address.

/s/ *Alexandra Goodstone*